(No. 31840

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FRANK DERRICO, Plaintiff in Error.

*Opinion filed May 24, 1951—Rehearing denied September 17, 1951.*

SAMUEL L. GOLAN, and LEONARD W. GOLAN, both of Chicago, for plaintiff in error.

IVAN A. ELLIOTT, Attorney General, of Springfield, and CHARLES A. HELFFRICH, State's Attorney, of Ottawa, (JOHN S. MASSIEON, of Ottawa, and HARRY L. PATE, of Tuscola, of counsel,) for the People.

Mr. JUSTICE CRAMPTON delivered the opinion of the court:

A grand jury of the October, 1949, term of the circuit court of La Salle County returned an indictment of two counts, charging the defendant, Derrico, with the burglary of the H. Levine Company warehouse in La Salle on the night of February 22, 1949. Each count invoked the provisions of the Habitual Criminal Act, because Derrico had been successfully prosecuted in the Federal court for a

felony and had served a sentence therefor in the penitentiary. A jury found him guilty as charged, and he was sentenced to the penitentiary for life. His defense was an alibi.

During the night of February 22, the safe of the Levine Company was removed from its office to the cold storage room in the same building, forcibly opened by the use of burglar tools, and over $900 in money and about $7000 of negotiable bank checks were taken therefrom. This safe weighed several hundred pounds, and two of the four wheels upon which it rested could not turn; so it was apparent that it could not have been moved by one man. On the succeeding day one of the stolen checks was deposited by Charles Hrabina in his account with a bank in Libertyville, Illinois. In April the drawer of the check notified the bank that it was one of the checks stolen from the Levine Company. Hrabina was called upon to make the check good and he did so, explaining that he had cashed the check for a stranger while in a tavern down in the oil fields. Edward Ryan, the sheriff of La Salle County, on being informed of the appearance of this check, visited the bank on June 30. Thereafter, and on the same day, Ryan interviewed Mrs. Hrabina and obtained a warrant against her husband, charging him with the burglary. Ryan then advised the sheriff of Richland County at Olney of the warrant for Hrabina and asked that official to locate him, for Ryan would be down the next morning. Ryan knew the make of the car Hrabina was driving and its license number.

The next day (July 1,) while Ryan and his deputy, Murray, were driving south between Newton and Olney, they recognized a car traveling in the opposite direction to be the one they were looking for. They turned, followed the car into Newton, and stopped it. Two men, who were unknown to either Ryan or Murray, were the occupants, and on demand they identified themselves. The driver was

Hrabina; the other was the defendant. The two were taken over to the sheriff's office in Newton for questioning and placed under arrest. Hrabina, on the demand of the officers, turned over the keys to his car and they searched it. Two grips, or cases, were found in the trunk of the car. One contained a complete set of burglar tools; these Hrabina admitted belonged to him. The other container held miscellaneous personal effects and a 45-caliber pistol and ammunition therefor. The defendant at first denied ownership of this container and contents but in a few minutes did admit such, including that of the pistol. A loaded revolver belonging to Hrabina was found secreted on top of the glove compartment of the car. Both men denied staging the Levine Company burglary; the defendant has remained steadfast in his denial, while Hrabina did not admit his participation therein until July 5, following a conference with his wife. Hrabina was a witness for the People at the trial of the defendant, and the verdict of guilt rested upon the largely uncorroborated testimony of this accomplice.

Defendant, prior to trial, moved to quash the indictment on the ground no competent evidence was presented to the grand jury. Hrabina did not testify before that body, so he had to rely upon the testimony of the eight witnesses who did testify before it. The trial court would not receive this evidence because it was of the opinion the law did not allow it to weigh such evidence, and, further, it did not want to go into the merits of the case on a preliminary motion. Defendant contends the evidence before the grand jury was incompetent because it did not, in any way, connect him with the burglary. Consequently the guaranties of the State and Federal constitutions, that no person shall be held to answer for an infamous criminal offense except upon the indictment of a grand jury, were denied him. (Ill. Const. sec. 8, art. II; Fed. Const. fifth amendment.) A motion to quash an indictment will not

permit the trial court to inquire into the proceedings before the grand jury for the purpose of determining whether the evidence heard was sufficient to support the indictment, unless all of the witnesses before that body were incompetent or all of the testimony on which the indictment was returned was incompetent. (*People* v. *Wheeler,* 403 Ill. 78; *People* v. *Gould,* 345 Ill. 288; *People* v. *Duncan,* 261 Ill. 339; *People* v. *Bladek,* 259 Ill. 69.) All of the witnesses who appeared before the grand jury were competent, and the evidence which was produced by the testimony of those witnesses was competent. Simply because Hrabina was not a witness before that body, does not raise the presumption that no competent evidence was heard by it. (*People* v. *Duncan,* 261 Ill. 339.) Indictments will not be quashed because, according to defendant's theory of the case, those who testified before the grand jury as witnesses to the crime did not, in fact, witness the commission of the offense charged. (*People* v. *Price,* 371 Ill. 137.) An indictment is only a formal charge, and defendant makes the mistake of assuming the necessity of a degree, and quality, of proof before the grand jury nearly akin to that required on trial. The trial court did not err in refusing to weigh the evidence adduced before the grand jury, and the refusal to quash the indictment was not error. The same point was subsequently made by him in his motion for a new trial and was supported by the same argument. The trial court refused to grant a new trial for that reason, and it did not err.

The defendant filed a written petition to suppress certain evidence, *i.e.,* the objects found in his case when it was searched at Newton. The main item stressed was, of course, the 45-caliber pistol. The trial court denied the petition, and the involved items were allowed in evidence. The petition was grounded upon the fact he was arrested without a warrant on July 1, 1949, which was about 4½ months after the burglary, and that neither Ryan nor Mur-

ray had reason to suspect the defendant had committed any crime, and thereby the arrest was illegal and the subsequent search and seizure was a violation of sections 2, 6, and 10 of article II of the State constitution and of the fourth and fifth amendments to the Federal constitution. Those sections of article II provide, respectively, against deprivation of life, liberty or property except by due process of law; against unreasonable search or seizure; and against being compelled to incriminate one's self. The fourth and fifth amendments to the Federal constitution are restraints only upon the National government, and not upon the States. *Bolln* v. *Nebraska,* 176 U.S. 83, 20 S.Ct. 287, 44 L. ed. 382; *Miller* v. *Texas,* 153 U.S. 535, 14 S.Ct. 874, 38 L. ed. 812; *Hunter* v. *City of Pittsburgh,* 207 U.S. 161, 28 S. Ct. 40, 52 L. ed. 151.

The arrest of defendant was made without benefit of a warrant. The determination of the point presented rests upon whether Ryan had, at the time of arrest, a belief as to the guilt of defendant such as would influence the conduct of a prudent and cautious man. (*People* v. *Duchant,* 370 Ill. 650.) This belief need not be predicated upon an actual status of guilt. A crime had been committed, and the arresting officer had knowledge of it at the time of arrest. He then knew Hrabina was directly connected with the burglary because of his depositing the stolen check in his bank account. In connection with that deposit, he knew Hrabina's story of how he came into the possession of the check was false because of what the drawer and payee of the check had divulged to the bank, and the record made of the check by Levine Company upon its receipt. An additional known fact to raise the arresting officer's suspicions was that the safe could not have been moved from the office to the cold storage room by the efforts of one man. All of those known facts, when coupled with finding defendant in the company of the suspect Hrabina, both armed, were enough to engender in

Ryan, as a prudent and cautious man, a belief that defendant was implicated in the robbery. The facts of the elapse of time and distance from the scene of the robbery, which are argued so strongly by defendant, have no persuasive force. The cases of *People* v. *Ford,* 356 Ill. 572, and *People* v. *Henneman,* 373 Ill. 603, cited in support of his point, properly state and apply the law to the facts of each case. Each involved a charge of carrying a concealed weapon, and an unlawful arrest without a warrant. The arresting officer in each case did not have a reasonable belief as to the guilt of the defendant of any crime, such as would influence the conduct of a prudent and cautious man. The trial court did not err in denying the petition.

Error is also charged because the trial court admitted in evidence the items involved in the petition to suppress. One reason is based upon the contention the arrest of defendant was illegal, and the resulting search and seizure were equally so. That reason we have disposed of. It is additionally urged that the items, particularly the pistol, should not have been admitted because of their lack of relevancy to the issue; this rests upon the idea that the pistol "was not even alleged or proved to be the same gun which, according to Hrabina's testimony, Derrico had with him on the night of the burglary." This statement is in direct opposition to the facts in the record, and the trial court did not err in admitting the items, particularly the pistol, in evidence. We do not quarrel with the cases cited by defendant in support of this contention; the facts of the instant case vary so from those of the cases cited, that the application of those rules is not warranted here.

It is charged the trial court unduly limited the cross-examination of Hrabina when the defendant endeavored to impair his credibility by asking him certain questions. Hrabina was asked how long he had been a thief, a burglar, a safecracker; how long he had known and associated with a safecracker named Davis. Further, in reference

to a statement by Hrabina that his first burglary of a safe was in the company of defendant and Davis, he was asked if he had any qualms of conscience and had learned something on that occasion about cracking safes. Other unanswered questions concerned whether he ever tried to obtain his release on bail and had demanded a quick trial. Defendant maintained he had a right to know why Hrabina had willingly stayed in jail from July, 1949, to the following May if he knew of his right to release on bail. The questions, he said, were a part of his inquiry into Hrabina's motive in testifying for the prosecution, and if a promise of immunity had been given.

Great latitude is permitted in the cross-examination of an accomplice who has testified for the prosecution. (*People* v. *Durand*, 321 Ill. 526.) His testimony should be subjected to the same tests which are applied to the testimony of other witnesses. (*Campbell* v. *People*, 159 Ill. 9.) It is proper for the defendant's counsel to inquire on cross-examination what motive impelled the accomplice to testify. (*People* v. *McKinney*, 267 Ill. 454.) That would be in an endeavor to unearth some motive which would seriously impair, or destroy, the credibility of the accomplice as a witness. Though great latitude is allowed on such cross-examination, "It must, however, be remembered that, even though not a defendant, the witness can be made to testify only to former convictions involving infamous crimes, and cannot be interrogated on arrests or indictments, or upon convictions of crimes not infamous, as the credibility of a witness is not presumed to be affected by anything less than the conviction of an infamous crime." (*People* v. *Halkens*, 386 Ill. 167.) The items of cross-examination set forth in the brief of the defendant, upon which he bases his contention of undue limitation of interrogation, do not contain any questions as to whether Hrabina had been tendered, or given, any inducements for testifying against defendant. No questions were asked concerning

any prior conviction for an infamous or noninfamous crime, and arrests or indictments for either.

The questions directed to why the witness did not obtain his release on bail and ask for a quick trial, instead of remaining in jail from July, 1949, to the following May, cannot be said to solely tend to divulge a base motive for testifying against the defendant; to the contrary, there may have been an inability to raise the required bail. We have carefully read the whole of the fifty-nine pages devoted to the cross-examination of Hrabina. Whatever prejudicial error may appear from the refusal of the trial court to allow answers to those questions pertaining to bail and a quick trial is reduced to nonprejudicial proportions when those questions are studied against the background of the whole of that cross-examination. When the questions which pertained to the motive for testifying for the prosecution were confined by the defendant to legally permissible channels, the trial court did not prevent answers being given. This bald statement is made by counsel for the defendant: "The trial court on every occasion during the cross-examination came to the rescue of Hrabina whenever so called upon by the State's Attorney." That is a charge the trial court knowingly forsook the role of impartiality and is simply not borne out by the record to any degree. On the contrary, its does demonstrate that the trial court made wise use of its discretion in limiting the scope of the defendant's examination of Hrabina.

The habitual criminal portion of each count was based upon the fact that in 1928 the defendant was indicted for the armed robbery of the United States mails, tried, convicted, and served a sentence therefor in the penitentiary. The State's Attorney in his opening statement informed the jury of the salient portions of that Federal indictment, conviction, and sentence, as was set forth *in haec verba* in the instant indictment. The defendant argues that inasmuch as he admitted the Federal offense at the start of

the trial, it was error to allow the prosecution to prove it, and to repeatedly emphasize at every opportunity during the trial by what weapons the defendant had effected the robbery of the mails. This was all done, he avers, for the sole purpose of inflaming the jury against him. When the authenticated copy of the record of the Federal case was read in evidence, he unsuccessfully endeavored to forestall that by again admitting such conviction, and stating the reading of the instrument in evidence would only have a tendency to prejudice the jury.

The jury heard no more than what came properly to its knowledge by the reading of the record in evidence. The defendant has failed to indicate in his brief just where the repeated references to the prior conviction can be found. Our search of the record found nothing to support the assertion. The State's Attorney was careful to point out in his opening statement that the prior conviction was not to be taken as any evidence whatever of the guilt of the defendant in the present case. The jury was adequately instructed that the evidence of the prior offense was not evidence of the commission of the one charged. We are unable to understand how the remarks of the State's Attorney, made in the opening statement regarding the habitual criminal portions of the counts, would engender in the jury a feeling of prejudice against the defendant. The point is not well taken.

The defendant declares that during the cross-examination of his wife, the trial court erroneously allowed the State's Attorney to ask highly irrelevant questions for the sole purpose of prejudicing him in the minds of the jury. In response to pointed questions, she stated that her brother-in-law, Mike Derrico, ran a billiard hall in Melrose Park, and that she knew that a certain night club in the same municipality was a notorious affair where gambling was conducted. When asked, she could not tell how far apart the two places were.

The defendant's wife testified as his alibi witness. Preceding her on the stand was Sam Rubin of Melrose Park. He testified for the defendant in denial of Hrabina's statement that two gas masks in evidence (plaintiffs exhibits 18 and 19,) had been purchased in Rubin's army surplus store several months prior to the burglary. On cross-examination, Rubin testified he knew of defendant's brother Mike but did not know if he had a business establishment in Melrose Park. The prosecution maintains the questions were asked Mrs. Derrico for the purpose of showing Rubin's statements to be false. In other words, the right of liberal examination, allowed when an alibi witness is being cross-examined, was used to query Mrs. Derrico on a subject which bore no relation to the alibi but only pertained to the credibility of a witness who had testified for the defendant on an entirely different matter than the alibi. The questions bore no relation to the subject matter of the direct examination of either Mrs. Derrico or Rubin.

In criminal cases, great latitude is allowed in the cross-examination of a witness, but the scope of that examination is largely within the sound discretion of the court. (*People* v. *Gambony,* 402 Ill. 74.) Mrs. Derrico was asked questions which should, with greater propriety, have been asked of Rubin on his cross-examination. The defendant has quoted statements of this court in *People* v. *Lewis,* 313 Ill. 312, and *People* v. *Gordon,* 344 Ill. 422, as accurately describing the type of cross-examination undergone by Mrs. Derrico when the prosecution endeavored to impair the credibility of witness Rubin. In each case, the facts to which the quoted statements were directed are not at all like the facts upon which the contention of the defendant rests. We detect no error, however, for we find no indication in the record that the questions operated to prejudice the jury against Mrs. Derrico, as an alibi witness, or against the defendant to an extent which would constitute reversible error.

The jury retired about 3:30 P.M. to reach a verdict, and at eight o'clock P.M. it was informed that unless it reached a verdict by nine o'clock P.M., it would be sent to a hotel for the night. When it was nine o'clock P.M., the jury requested an extension to ten o'clock P.M., and at the latter hour, obtained another extension to 10:30 P.M. The bailiff in charge was asked by the jury at 10:20 P.M. how much time was left; ten minutes later the verdict was reached. The defendant charges the trial court hastened the reaching of the verdict, thereby denying to the jury adequate time for deliberation, and this was highly prejudicial to him. The jury deliberated continuously for seven hours and could have had longer time if needed. The trial court did not curtail the deliberations of the jury. All it did, in effect, was to inform the jury it would be accommodated in a hotel overnight for the opportunity of further deliberations the next day, rather than prolong the deliberations far into the night. It did not command, direct, or even request a verdict by a stated time. Defendant cites *People* v. *Golub,* 333 Ill. 554. Our observations therein upon the duty of the trial court not to curtail the time of a jury for deliberating on a verdict still hold, but their application is not germane to this case. The trial court did not fail to fulfill its duty to the jury.

Lastly, the defendant believes his guilt has not been established beyond a reasonable doubt. The alibi presents only a question of fact. When we look at the evidence bearing directly upon that question, we find the testimony of the defendant's wife. According to Hrabina, the burglary took place between the hours of 5:30 or 6:00 o'clock P.M. and 9:00 o'clock P.M. of the night of February 22. The defendant did not give any information on his direct examination concerning his whereabouts during the twenty-four hours comprising that day, let alone the involved three or three and one-half hours. On his cross-examination he was not questioned as to his whereabouts when the

burglary occurred, though his wife prior to his examination had given her alibi testimony. In substance, she said that they were the parents of four boys (all married) and a daughter of seven years. Living with them was one son, his wife and children. February 22 was not a school day, and all slept late. After a late dinner, the defendant, witness, their daughter, the son, his wife and children, all left the house that evening and went to the home of another son in Bellwood to see his new baby. All stayed quite late,—until ten o'clock or 10:30,—and the defendant was with them all of the time. The record does not disclose why other adult members of the two households were not called to testify in support of this witness. Sam Rubin was the only other witness for the defendant, and his testimony did not pertain to the question of alibi.

Hrabina, by his own admissions and the accusations of the defendant, is a burglar and a safecracker with a varied criminal record in the past. The defendant was impeached by the introduction in evidence of an authenticated copy of the record of a Federal court, wherein it was shown he had been indicted for, and pleaded guilty to, the crime of perjury and served a sentence therefor in a Federal penitentiary. The defendant, by his own admissions, is also a man with a varied criminal record in the past and a proved perjurer. Hrabina, additionally, has accused him of being a burglar and safecracker ever since the fall of 1947. Some of the associates of each man were known by him to be criminals. When Hrabina was on the witness stand, he earnestly endeavored to convince the jury that his becoming a burglar and safecracker was the work of the defendant. The defendant, in the same manner, made equal efforts to convince that body that Hrabina was a burglar and safecracker when he first associated with him, and that, despite the repeated solicitations of Hrabina that he become one, he did not succumb to the temptation. Additionally, each man generally endeavored to paint the criminal

past of the other in darker tints than his own. The testimony of each, when compared with the testimony of the other against the background of the remainder of the evidence, discloses that neither man had much respect for the truth when testifying under oath. Hrabina did admit that the defendant had never, by deed or word, endeavored to hurt him in any way.

Hrabina testified he filched the Ohio Oil Company check and deposited it in his account for the sole purpose of establishing a chain of evidence which would certainly connect him with the robbery. By this means, he said, he hoped to become permanently divorced from a criminal career, for it was becoming too difficult. There is evidence in the record that defendant, while incarcerated in the La Salle County jail, was willing to bestow upon the sheriff a monetary inducement to bring about his release from jail by means other than legal and sufficient bail.

This court has often held the testimony of an accomplice to be legal and competent, and a conviction may rest upon the uncorroborated testimony of such individual, provided it be of such character as to satisfy the jury beyond a reasonable doubt of the guilt of the defendant. Before such conviction will be sustained by this court, the record must be free from errors prejudicial to the defendant. In this case we have determined that the record is free from that kind of error. The rule requires that a jury, when determining the evidentiary worth of the testimony of an accomplice, must not judge that testimony as it would that of another type of witness. On the contrary, it must look upon it with great suspicion, must act upon it with great caution, and it must be satisfied, from the accomplice testimony and all of the circumstances in evidence, of the guilt of defendant beyond all reasonable doubt. (*People* v. *Rongetti*, 338 Ill. 56; *People* v. *Kelly*, 380 Ill. 589.) When all of the safeguard requirements of the rule have been fully observed by the jury,

this court would not be warranted in any case in setting aside the finding of a jury that a defendant is guilty, provided prejudicial errors have not been committed, unless we can say the finding is palpably against the evidence or is so unsatisfactory as to justify a conclusion there is reasonable doubt of a defendant's guilt. *People* v. *Pokosa,* 342 Ill. 404; *People* v. *Leving,* 371 Ill. 448.

In this case the jury has determined the credibility of the witnesses and the weight of the evidence. On the whole of the record, we cannot say that the jury has not observed all of the applicable rules pertaining to the evaluation of the accomplice and other testimony; that it has not properly weighed all of the evidence; or that there is reasonable doubt of the defendant's guilt.

The judgment of the circuit court of La Salle County is affirmed.