(No. 32077.—

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff in Error, *vs.* ALEX LAMBERSKY, Defendant in Error.

*Opinion filed November 27, 1951.*

452

IVAN A. ELLIOTT, Attorney General, of Springfield, and MOREY C. PIRES, State's Attorney, of Dixon, (HARRY L. PATE, of Tuscola, of counsel,) for the People.

WALTER W. STEVENS, of Paw Paw, for defendant in error.

Mr. JUSTICE CRAMPTON delivered the opinion of the court:

Alex Lambersky was indicted by a grand jury of Lee County for the crime of manslaughter. He thereafter filed in the circuit court a motion to quash the indictment on the grounds that the evidence introduced before the grand jury was insufficient and that he was compelled to give evidence against himself, in violation of his constitutional rights. The motion was granted, and the People bring this writ of error to review the judgment.

The record discloses that during the period in question defendant was an inmate of the Dixon State Hospital for mentally deficient persons, having been adjudicated feeble-minded by the circuit court of Cook County about thirteen years prior thereto. He was given certain duties to assist the attendant in taking care of the large number of low-grade patients in the hospital. On April 11, 1951, at about 1:00 o'clock A.M., Kenneth LaRoy, one of such patients, was escorted to the toilet and returned to his bed in the dormitory. At 3:00 o'clock he was found dead in his bed with scratches on each side of his throat.

Later that morning, Dr. Bush, superintendent of the hospital, conducted an investigation in which he interrogated certain employees and the three patients, including defendant, who were assigned to assist the attendant. When questioned about the matter, defendant voluntarily admitted having choked LaRoy in an effort to quiet him. Several hours after this investigation an inquest was held at which the jury found that LaRoy died from asphyxia caused by choking at the hands of defendant. It was recommended the latter be held to the grand jury. Transcripts of the inquest and of the investigation conducted by Dr. Bush were produced before the grand jury, together with the testimony of several witnesses. The hospital attendant testified that he heard a noise between 2:30 and 3 o'clock and that when he went to investigate he saw defendant standing

at the foot of LaRoy's bed. He observed nothing further, and returned to the office. Richard Shear, a patient who had been given work to do in the hospital, testified that at a quarter to three he looked in the dormitory and saw defendant by LaRoy's bed, that defendant was standing with his hands outstretched, and that when he saw the witness he uttered a noise and turned around toward the window. Testimony by Dr. Bush and two other witnesses was also heard by the grand jury.

The People insist the record discloses no valid ground for quashing the indictment. We agree. The rule is well settled that on a motion to quash an indictment the court will not inquire into the proceedings before the grand jury for the purpose of determining whether the evidence heard was sufficient to support the indictment, unless all of the witnesses before that body were incompetent or all of the testimony on which the indictment was returned was incompetent. *People* v. *Derrico,* 409 Ill. 453.

To sustain the judgment defendant contends that the confession of an insane or feeble-minded person is a nullity and inadmissible as evidence; that no other evidence tending to indicate his guilt was presented to the grand jury except the testimony of Richard Shear, another feeble-minded person; and that such testimony is also incompetent because of Shear's mental condition. The contention cannot prevail. It is not disputed that the witnesses other than Shear were competent as such. And the mere fact that Shear had been adjudicated a feeble-minded person does not disqualify him as a witness. The test is whether the derangement or feeble-mindedness is such as to make the person untrustworthy as a witness. If he has the capacity to observe, recollect and communicate he is competent, and his mental deficiency is considered only in so fa'r as it affects the credit to be given his testimony. (*Oswald* v. *Civil Service Com.* 406 Ill. 506; *Truttmann* v. *Truttmann,* 328 Ill. 338.) It does not appear that Shear lacked the

capacity to observe, recollect and communicate. He was not, therefore, incompetent as a witness, and his testimony was admissible.

A different question is presented where confessions or admissions of the party to be charged are concerned. Such cases involve a waiver of the constitutional right against self-incrimination and an intentional relinquishment of a known right. As an insane person cannot know of his constitutional rights, his confession is regarded as a nullity and cannot be treated as evidence against him. (*People* v. *Shroyer,* 336 Ill. 324.) In the case at bar, however, the evidence other than that concerning the confession was clearly competent and the presence of such evidence is sufficient to support the indictment. Where only some of the testimony or some of the witnesses before the grand jury were incompetent, the court will not go into the barren inquiry how far such testimony or such witnesses contributed to finding the indictment, which is merely a charge, but will admit the competent witnesses or testimony on the trial before the petit jury. *People* v. *Bladek,* 259 Ill. 69.

The mere fact that the persons who testified before the grand jury did not in fact witness the commission of the offense does not render their testimony incompetent, either before the grand jury or at the trial itself. An indictment is only a formal charge, and does not require the degree and quality of proof necessary for a conviction. (*People* v. *Derrico,* 409 Ill. 453.) Although the transcripts containing defendant's confession were read to the grand jury, it cannot invalidate the indictment where, as here, other witnesses were also before that body on whose testimony it might have been returned.

Defendant further maintains that an indictment cannot be returned against an insane person who has been committed to the Department of Public Welfare; that such an indictment is void; and that it deprives him of rights without due process of law. We find no merit in these con-

456

tentions as applied to the case at bar. It is true, defendant was adjudged to be a feeble-minded person in 1938. But such prior adjudication is not conclusive proof of criminal irresponsibility as of the time of the commission of a crime. Nor does it defeat the circuit court's jurisdiction of an indictment for a criminal offense by the person so adjudged. (See, *People ex rel. Wiseman* v. *Nierstheimer,* 401 Ill. 260, 278.) It merely creates a presumption—where the insanity or other mental disability is of a permanent type or continuing nature—that the condition still exists on the subsequent date. The responsibility of raising the question of insanity rests upon the accused and his counsel (*People* v. *Nierstheimer,* 401 Ill. 260,) and the issue so presented must be decided in accordance with the method prescribed by the legislature. See Ill. Rev. Stat. 1949, chap. 38, par. 592.

We conclude that the circuit court erred in granting defendant's motion to quash the indictment. The judgment is reversed and the cause remanded, with directions to overrule the motion.

*Reversed and remanded, with directions.*