283 So.2d 553 (1973)
James Steddo McDOLE, Appellant,
v.
STATE of Florida, Appellee.
Thomas Henry BLACKWELL, Appellant,
v.
STATE of Florida, Appellee.
Nos. 41843, 41906.
Supreme Court of Florida.
May 16, 1973.
Rehearing Denied October 26, 1973.
Michael J. Minerva, Asst. Public Defender, for appellants.
Robert L. Shevin, Atty. Gen., and William E. Whitlock, III, Asst. Atty. Gen., for appellee.
ERVIN, Justice.
Appellants in these consolidated cases were convicted of rape and sentenced to death. Pursuant to Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), this Court temporarily relinquished jurisdiction to the Circuit Court for resentencing. See Anderson, et al., v. State, 267 So.2d 8 (Fla. 1972). Both appellants were resentenced to life imprisonment and the cause is now before us for consideration of the remaining points on appeal.
During the course of appellants' trial, the jury was excused and the court heard evidence on the admissibility of alleged confessions made by each appellant. A motion to suppress these confessions as not having been voluntarily given was denied by the court with the simple statement, "The motion will be denied." Following this, the court stated that each side could present the same evidence on the issue of voluntariness to the jury "so that they can give what weight they consider appropriate to this alleged confession."
*554 Appellants argue, first, that the trial judge did not make an unequivocal and explicit finding of voluntariness as required by the Fourteenth Amendment. Second, they contend that such a finding, if it had been made, would not have been supported by the evidence presented. Appellants are correct on both points.
The United States Supreme Court, in Sims v. Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593 (1967), said that
"... it is not for the jury to make the primary determination of voluntariness. Although the judge need not make formal findings of fact or write an opinion, his conclusion that the confession is voluntary must appear from the record with unmistakable clarity." (Emphasis supplied.)
We do not believe that such "unmistakable clarity" appears simply from the trial judge's statement that the motion to suppress the confessions is denied. The requirement of the Fourteenth Amendment is that the trial judge make a determination that a confession was freely and voluntarily given before he allows it to be considered by a jury. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). A specific finding of voluntariness is necessary to ensure that a judge has properly met this requirement. The necessity of such a requirement is particularly evident where, as here, a strong showing is presented by defendants in support of their contention that they were subjected to brutal beating coercing their confessions.
Without a specific finding, we do not know if the judge properly based his ruling of admissibility on the issue of voluntariness, and we cannot infer a specific finding of voluntariness simply from a specific denial of a motion to suppress. The judge might have based his denial of the motion on the idea that any error in admitting the confessions would be harmless, or he might have felt that the primary determination of voluntariness should have been left to the jury. The only indication we have in the record of this case of the basis for the judge's denial of the motion to suppress is his statement that he would let the jury hear and consider the evidence as to voluntariness. The judge might have been referring to the fact that a jury may still find a confession to have been involuntary and disregard it, despite a judge's finding that it was voluntary. Sims v. Georgia, supra.
If a finding of voluntariness had been made in this case it would not have been supported by the evidence, regardless of the standard of proof necessary to establish the fact. Recently the United States Supreme Court, in Lego v. Twomey, 404 U.S. 447, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972), held that the prosecution has the burden of proving by a preponderance of the evidence that a confession was freely and voluntarily given, but the Court added that the states could adopt a higher standard of proof. Prior Florida decisions have required such a higher standard of proof. E.g., Perkins v. State, 228 So.2d 382 (Fla. 1969). We are now, however, in agreement with our highest Federal court that proof of voluntariness by a preponderance of the evidence is a more appropriate requirement. Nevertheless, even by that less onerous standard the prosecution in this case did not meet its burden.
Concerning the evidence in the record relating to the voluntariness of the confessions, this is not the typical case wherein the only evidence is the statements of the police officers that the confessions were not coerced and those of the defendants that they were. If it were such a case, a finding of voluntariness  had it been made  could, of course, have been considered as supported by a preponderance of the evidence.
In this case the police officers who took the defendants' statements testified that they were voluntarily given, with no coercion of any kind, after the defendants had been advised of their rights and had signed waivers.
*555 Appellant McDole testified that he was told if he didn't confess to this crime he would be made to go outside and run "so they could shoot me and claim it was an accident." He said he was slapped, kicked, forced to take all his clothes off and wait in the interrogation room by himself, where he was beaten and "fed" the facts of the rape by the police officers, including the fact that a third suspect was with him and Appellant Blackwell and also raped the victim. He claimed that he "confessed" the facts as "fed" to him by the police officers.
The third suspect, one Jimmy Reese, was arrested the same night and he also "confessed" to the crime. The victim, however, testified that only two men raped her. The third suspect testified that he was taken to the police station, given a piece of paper with some facts and told to confess. He said he was beaten, kicked, called a black son-of-a-bitch, and told he would be killed. One officer, he said, held a gun to his private parts and threatened to shoot unless he made a statement.
Appellant Blackwell testified that he was refused permission to make a telephone call and placed in a room by himself for some time. While there, he heard someone (he thought it was the third suspect) yelling, "Don't hit me; don't shoot me; don't kick me." He was finally taken to the same room McDole had been questioned in. He testified that he was slapped and knocied to the floor by one officer while the other two had guns pointed at him. He also said that he was kicked in the side while on the floor; that he was beaten with a folding chair, most of which he managed to deflect with his hands; and that an officer spit at him and threatened to urinate on him. He testified that he was told by one of the officers what to say in his statement. His "confession" did not mention the third suspect.
Again, this is not the typical case wherein the sole question is the credibility of the police and the defendants. All three suspects were examined by a doctor on the following day.
The doctor said that the third suspect had a bruise underneath his eye and an abrasion along the front portion of his lower leg. This man had testified that he was hit in the face and kicked in the leg.
The doctor testified that McDole had a scratching-type abrasion on his hip. McDole had testified that he was kicked in the side and slapped with an open hand.
The doctor also said that Blackwell had a four-inch bruise on his left side, a laceration with dried blood over the left tibia, and a laceration with dried blood and swelling on the left leg. Blackwell had testified that he was slapped, kicked, and beaten with a folding chair.
The doctor said that all of the injuries were recent.
A deputy sheriff testified that when the three suspects were being booked in the county jail after their confessions, Reese had a bruised place on his cheek and was complaining that his head hurt; Blackwell had a skinned place on one of his legs and complained that his head hurt; McDole was complaining of pain in his side; and all three appeared frightened and claimed they had been beaten by the city police.
A confidential informer paid by the State testified that he saw McDole and Blackwell at the police station about the date the confessions were made and that McDole looked "drowsy, like he had been asleep twenty days and was beat up." This man also stated that one of the police officers involved later told him that McDole and Blackwell had been beaten into confessing.
One of the officers involved testified that he had never refused to make a statement to the F.B.I. concerning the investigation of this case. He was impeached in this matter by the transcript of his testimony at a prior trial wherein he said that he had refused to make such a statement.
*556 The waivers signed by McDole and Blackwell were introduced into evidence. The time on the waiver signed by McDole was ten minutes after the time on the confession he signed. The police officers could not explain this discrepancy, although they maintained that the waiver was signed before any statement was taken.
We fail to see how the trial judge could have concluded from this record that a preponderance of the evidence in this case proved that the confessions of McDole and Blackwell were made freely and voluntarily. There was ample evidence that the confessions were not made voluntarily, and admitting them into evidence flagrantly violated appellants' constitutional rights to be free from compelled self-incrimination.
Appellants' convictions are hereby reversed and this cause is remanded to the Circuit Court for a new trial, including, if necessary, an evidentiary hearing de novo on the admissibility of the confessions. In view of what has previously transpired in this cause, we are going beyond the usual requirement that only a specific finding of voluntariness be made. On retrial, if no new evidence on the issue is presented and the judge finds that these confessions were voluntarily made, we are directing that he enter on the record, clearly and specifically, his reasons for so finding.
It is so ordered.
CARLTON, C.J., and BOYD and McCAIN, JJ., concur.
DEKLE, J., dissents with opinion.
ROBERTS and ADKINS, JJ., dissent.
DEKLE, Justice (dissenting):
Inherent in an express denial by the trial judge of a motion to suppress the confessions is "an unequivocal and explicit" ruling upon the voluntariness thereof "with unmistakable clarity". A denial is an "explicit" NO.
I respectfully dissent.