HENDRY, Judge,
dissenting.
I respectfully dissent from the majority opinion. The circumstances surrounding the making of the inculpatory statements by the appellee present an interesting variation on the case law relating to the standards to be applied in determining whether a confession may constitutionally be admitted in evidence against its maker. Let us consider first whether an application of the requirements of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), is warranted and if not, whether the trial court’s exclusion of the confession may be sustained on the basis of safeguarding appellee’s Fifth Amendment privilege against self-incrimination which the Miranda procedure also serves to protect.
It is my view based upon my review of the record that the trial court’s ruling is supported by competent, substantial evidence and was a proper exercise of the court’s function of hearing the evidence, resolving evidentiary conflicts and ruling on the admissibility of a confession which is sought to be suppressed on the ground that its taking was in violation of the defendant’s privilege against compelled self-incrimination.[1] I further find the trial court to have specifically delineated its factual findings that based on appellee’s mental condition and the circumstances under which the confession was taken, the volun-tariness constitutionally required to allow admission of the self-condemning statements into evidence could not reasonably be said to have existed at the time the statements were made.
Moreover, my conclusion as to the correctness of the ruling on a constitutional basis appears to be at odds with the majority’s view that the question of voluntariness presented here did not raise a constitutional violation which would prevent its admissibility, and thus the confession should have been allowed to go to the jury.
I find inapplicable the line of cases typified by State v. Williams, 386 So.2d 27 (Fla. *1003 2d DCA 1980), holding that a defendant’s anxious or distressed mental state arising from his own apprehension of the situation in which he finds himself, as opposed to being the result of external, improper police influences, presents a question not of admissibility, but of evidentiary weight to be given the confession, and so is properly to be considered by the jury. As is noted in the discussion of the facts, the trial court properly considered other factors bearing on appellee’s mental state which serve to distinguish this case from those cited by the majority, (for example, the severity of ap-pellee’s mental condition, the psychologist’s testimony that the mental disorder arose just prior to the shooting, and the probability of influence on appellee’s mind arising from her friendship with the deputy). I therefore would affirm the correctness of the suppression ruling.
The uncontroverted facts establish that appellee was hospitalized by her personal physician, due to hysteria, soon after the shooting death of her husband which occurred on September 30,1978. While in the hospital and on the dates in question herein, appellee was diagnosed by a psychologist as having a “dissociative reaction,” a severe mental disturbance characterized by depersonalization and loss of touch with self and the external environment, and was regularly and continuously receiving medical administration of the drugs Thorazine and Valium.[2]
On October 2, 1978, appellee was visited in her hospital room by Deputy Sheriff Rick Roth of the Monroe County Sheriff’s Department and another officer. Deputy Roth was a friend of appellee. He used her first name in addressing her, said something like ‘things will work out,’ and then told her he wanted to know what had happened. He showed her an “advice of rights” form, which he gave her to read and asked her if she understood, which she said she did, and signed. The deputy did not read appellee’s rights to her, nor did he attempt to determine if she had in fact understood what she had been given to read and had signed. Appellee began to make a statement, but was stopped when a friend who was also present in the room suggested she wait for her attorneys to be present. Her attorneys arrived and after speaking to her privately, suggested to Roth that the taking of the statement be delayed until the following day as she was in no condition to testify, at which point both officers left.
On October 4, 1978, Roth and another officer returned to appellee’s hospital room. Her two attorneys were also present. Again Roth did not advise appellee of her rights, but indicated to her the “advice of rights” form she had signed two days before and asked if she knew it was still in effect, to which she responded yes. Although her attorneys advised her against doing so, appellee insisted on making a statement. She said repeatedly that Rick Roth was a friend and she wanted and had to tell him what happened; she could not let him think bad of her. The statement, given in the form of a narrative at her attorneys’ suggestion, was recorded and later transcribed and is the chief subject of appellee’s motion to suppress which is the basis of this appeal.
Deputy Roth testified that appellee was visibly upset during the meetings, but could carry on an intelligent conversation and understood what was happening; however, this testimony is controverted by that of her two attorneys, the state’s own witnesses, that she was not able to understand *1004 what was said to her, nor was she aware of the consequences of making a statement, nor was she in any condition to testify while in the hospital, being “hysterical” and “uncontrollable” and breaking down on many occasions while giving her statement to the deputy. The latter testimony, taken together with that of the psychologist who testified on behalf of appellee to the effect that she was suffering from a severe mental disturbance which probably arose just prior to the alleged shooting, and was “definitely not rational” during the time frame in which the statements were made, is, I believe, sufficient to outweigh the testimony of the deputy and provide competent and substantial evidence to support the trial court’s ruling.[3]
Let us next consider the relevant l°gal authorities, beginning with Miranda v. Arizona, supra, and then take up other decisions which I find applicable to the facts before us. The state has urged and the majority opinion has similarly held that the trial court’s application of the Miranda doctrine was not warranted by the facts in that they do not comprise the type of in-custody interrogation contemplated by Miranda. I agree that this case does not fall squarely within the well defined pattern of circumstances which would require the exclusion of a confession based on noncompliance with Miranda.[4] For example, the essential element of “custody,” or the officers’ intent to hold appellee, is lacking in that she had been privately admitted to the hospital by her own physician and her freedom of movement was not restricted by the officers. I thus find that a review of this case based on the standards set forth in Miranda is not appropriate.
In support of its holding that Miranda is not applicable, the majority has cited numerous cases from other jurisdictions for the rule of law that police interrogation of a hospital patient concerning a criminal episode of which he may have knowledge does not amount to in-custodial interrogation so as to trigger Miranda. A review of these cases discloses that, while their main concern is the question of applicability of Miranda, they do not preclude a finding that under some circumstances, a confession given by a hospital patient to a police officer may be so lacking in voluntariness that it may not be used against its maker. See, e. g, People v. Phinney, 22 N.Y.2d 288, 292 N.Y.S.2d 632, 239 N.E.2d 515 (N.Y.1968), stating the rule that if the circumstances under which the questioning occurred are likely to substantially affect the individual’s will to resist and compel him to speak where he would otherwise not do so freely it could constitute an in-custodial interrogation so as to invoke Miranda, but finding it inapplicable to the facts of that case.
While I would hold that the instant case is not directly controlled by Miranda, and thus the trial court’s ruling, if it were based solely on that ostensible violation might require reversal, I find, however, that the trial court’s suppression ruling may be sustained upon the basis that its extensive factual findings relative to appellee’s mental condition, the influence of drugs and the surrounding circumstances under which the confessions were made, could be said to have reasonably led it to the conclusion that suppression of the confession was necessary to safeguard the appellee’s constitutional rights.[5]
My view in this regard is, I think, supported by the leading Florida case of Reddish v. State, 167 So.2d 858 (Fla.1964), which was decided before Miranda, and which continues to be applicable in those *1005 situations, such as in the case at bar, where in-custodial interrogation sufficient to invoke Miranda is not present. The Florida Supreme Court in Reddish applied a test of the “totality of circumstances” to reach its determination that the defendant’s incriminating responses to the questioning of a state attorney at the hospital were unconstitutionally obtained in violation of Article I, Section 12 [now Section 9] of the Florida Constitution. Factors explored by the court as bases for its decision were the defendant’s serious physical condition caused by a self-inflicted gunshot wound in the chest and heavy loss of blood, combined with the impact of several pain-killing narcotics, the lack of clearcut testimony regarding his mental condition, and the court’s view that the taking of the confession under these circumstances constituted an element of psychological or physical coercion. The court stated the rule that:
If for any reason a suspect is physically or mentally incapacitated to exercise a free will or to fully appreciate the significance of his admissions, his self-condemning statements should not be employed against him.
167 So.2d at 863.
Applying these standards enunciated in Reddish to the facts of the present case, I find in the “totality of the circumstances” which the record presents, an individual who was seriously mentally incapacitated and under the influence of two sedative drugs at the time she made the challenged confessions. The record further supports the conclusion that the appellee, in her impaired state of mind, was influenced by her friendship with deputy Roth and apparently felt some compulsion to make a statement to him because of this.[6] Additionally, I note that defendant disregarded her attorneys’ advice not to give any statement, and persisted in so doing. This clear, record evidence, together with the presence of testimony as to the appellee’s mental state at the time the confessions were given, provides ample support for the trial court’s suppression ruling and, I think, requires its affirmance. I also note, and give due deference to, the fact that a trial court’s ruling against the state on a motion to suppress necessarily implies a finding that the state did not meet its burden of proof. (The state’s burden is that of proving by a preponderance of the evidence that the confession was freely and voluntarily given, McDole v. State, 283 So.2d 553 (Fla.1973).)
I find it appropriate to note at this point a strand of legal authority which lends additional support to the suppression ruling, to-wit: the confession of a person who is mentally or physically incapable at the time is considered inadmissible against him, as involuntarily given, 3 Wharton’s Criminal Evidence § 672 (13th ed. 1973); Blackburn v. Alabama, 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960); Harvey v. State, 207 So.2d 108 (Miss.1968), and the degree of insanity which would render a confession incompetent is that which would be sufficient to render the defendant incompetent to testify. People v. Lambersky, 410 Ill. 451, 102 N.E.2d 326 (1951). While the insanity issue was not directly raised before the trial court, the record facts could conceivably support such a theory, which further demonstrates the correctness of the court’s ruling.
For the foregoing reasons, and based upon the authorities cited, I would affirm the order of the trial court.

. Peterson v. State, 372 So.2d 1017 (Fla. 2d DCA 1979); Lane v. State, 353 So.2d 194 (Fla. 3d DCA 1977); Melero v. State, 306 So.2d 603 (Fla. 3d DCA 1975).

. The Physicians’ Desk Reference, 35th ed., (1981), provides the following information as to the nature and effects of these drugs:
Thorazine is the brand name for chlorproma-zine, a strong central nervous system depressant used in treatment of psychotic disorders. It also has sedative effects, may impair mental and/or physical abilities, especially during the first few days of therapy, and may cause adverse reactions such as drowsiness.
Valium is the brand name for diazepam, a central nervous system depressant used in treatment of anxiety disorders. Its side effects may include drowsiness, fatigue and infrequently, confusion or depression. It is also a controlled substance pursuant to section 893.-03, Florida Statutes (1980).

.I note that the standard to be applied in appellate review of a trial court’s determination of fact questions in a suppression hearing is a deferential one; such determination will not be reversed unless clearly shown to be without basis in evidence or predicated upon an incorrect application of law. State v. Riocabo, 372 So.2d 126 (Fla. 3d DCA 1979), dismissed, 378 So.2d 348 (Fla. 1979).

. For a discussion of the relevant Miranda factors, see page 1000 of the majority opinion.

. My review is limited to considering the record evidence on this point in the light most favorable to the successful movant and resolving evidentiary conflicts in her favor. State v. Williams, 371 So.2d 1074 (Fla. 3d DCA 1979), cert. denied, 381 So.2d 771 (Fla. 1980).

. Although this factor alone would not be determinative, see, e. g., Halliwell v. State, 323 So.2d 557 (Fla.1975), holding that in a situation requiring Miranda warnings, the giving of those warnings by a friend of defendant does not vitiate their effectiveness, I believe it may properly be considered on review as part of the totality of circumstances.