562 So.2d 742 (1990)
Julia L. SIMPSON, Appellant,
v.
STATE of Florida, Appellee.
No. 89-1024.
District Court of Appeal of Florida, First District.
May 9, 1990.
Rehearing Denied July 3, 1990.
*743 Michael E. Allen, Public Defender, Paula S. Saunders, Asst. Public Defender, for appellant.
Robert A. Butterworth, Atty. Gen., Richard Doran, Director, Criminal Appeals, for appellee.
SHIVERS, Chief Judge.
Appellant seeks review of the trial court's denial of her motion to suppress her confession and its judgment entered on a jury verdict finding her guilty of second degree murder with a firearm. We remand the trial court's ruling on appellant's motion to suppress with directions, and we reverse the judgment of guilt and remand for new trial.
The grand jury indicted appellant for second degree murder following the shooting death of her husband, Dale Simpson, which occurred around 2:00 a.m., January 1, 1988, after a New Year's party the couple hosted.
Before trial, appellant moved to suppress oral statements made to law enforcement officers. At the suppression hearing Lieutenant Redmond testified that when he arrived at the crime scene Dale Simpson was dead and Julia Simpson was seated in the back of a police car, emotionally upset, and highly intoxicated. He said he did not read Julia Simpson her rights but one of the other officers told him they had been read to her. Lt. Redmond said that, without his asking, appellant, Julia Simpson, blurted out that her ex-husband had come into the house and shot Dale and hit her in the head with a gun. At that point Lt. Redmond, himself, advised appellant of her rights. He then asked appellant where her ex-husband had gone and she told him Marietta, Georgia.
Police took appellant to the hospital and there Lt. Redmond told appellant that police determined her ex-husband was in Tennessee. She then admitted to shooting her husband. She was taken to jail where, according to Lt. Redmond, she again admitted to the shooting after she had been readvised of her rights.
Upon questioning by Lt. Redmond the next day, appellant denied remembering the conversations with him the night before and denied remembering anything about the shooting.
At the suppression hearing, the trial judge heard testimony by Lt. Redmond and appellant. After all the testimony, the trial judge denied the motion to suppress stating
THE COURT: I'll deny the motion for this reason. I feel it's a question for the jury based on the testimony of Lieutenant, and is it Redmond?
MR. BORELLO: Yes, sir.
THE COURT: Even though he stated she was highly intoxicated, she understood his questions and could answer his questions.
MR. HELLMUTH: Judge, my only argument is 
THE COURT: The only question I have, and the state is, before it comes in, going to have to show, the state's going to have to show she was Mirandized, and I want an opinion as to what that officer said or did not say.[1]
*744 Before a jury may consider a confession, the trial judge must specifically find that the confession was voluntarily made. McDole v. State, 283 So.2d 553 (Fla. 1973). "`[I]t is not for the jury to make the primary determination of voluntariness. Although the judge need not make formal findings of fact or write an opinion, his conclusion that the confession is voluntary must appear from the record with unmistakable clarity.'" McDole, 283 So.2d at 554 (quoting Sims v. Georgia, 385 U.S. 538, 544, 87 S.Ct. 639, 643, 17 L.Ed.2d 593, 598 (1967)) (emphasis in McDole). In McDole the supreme court held that such unmistakable clarity did not appear from the trial judge's mere statement that the motion to suppress the confessions is denied.
Subsequently, the supreme court modified the strict requirement that an express finding of voluntariness must appear in the record, and in Antone v. State, 382 So.2d 1205 (Fla.), cert. denied, 449 U.S. 913, 101 S.Ct. 287, 66 L.Ed.2d 141 (1980) it elaborated:
Ideally, the trial judge should specify his conclusions concerning voluntariness of a disputed confession or inculpatory statement. However, due process is not offended when the issue of voluntariness is specifically before the judge and he determines that the statements are admissible without using the magic word "voluntary." The record reflects that the only issue before the court was the voluntariness of Antone's statements. The evidence clearly supports the finding that these statements were free from coercion.
Id. at 1212-1213.
Even if it can be said that the circumstances surrounding appellant's confession in the instant case indicate that it was voluntarily made, and allowing that intoxication alone does not render a statement involuntary,[2] the trial judge nevertheless did not make an unmistakably clear ruling that appellant's confession was voluntary.
First, a review of Lt. Redmond's testimony, both at the suppression hearing and at trial, reveals that he did not indicate whether he had advised appellant of her Miranda rights prior to her first confession at the hospital.[3] This confession came after Lt. Redmond confronted her with information on her ex-husband's actual whereabouts. As to whether appellant was properly apprised of her Miranda rights, the trial court merely stated at the suppression hearing that the State would have to show that she was "Mirandized" before the jury can consider it. However, the jury trial immediately followed the suppression hearing, and the trial court made no further preliminary determinations on whether appellant was read her Miranda rights, or whether her confession was otherwise voluntary.
Second, the deficiency is not in the trial judge's failure to use the word "voluntary" but the uncertainty created by his statement that he felt the matter was a question for the jury. In that he said it without explaining how he meant it, the statement strongly detracts from any construction of the record which finds that the trial judge made his ruling with unmistakable clarity. There is nothing else in the record to indicate that the judge, in making this remark, considered it only in its proper application, i.e., that the jury is free to consider the statement as one involuntarily made despite a court's earlier ruling that it was voluntarily made. McDole, supra.
As the supreme court stated in McDole in reversing denial of the suppression motion:
[t]he only indication we have in the record of this case of the basis for the *745 judge's denial of the motion to suppress is his statement that he would let the jury hear and consider the evidence as to voluntariness. The judge might have been referring to the fact that a jury may still find a confession to have been involuntary and disregard it, despite a judge's finding that it was voluntary.
Id. at 554. See also Bullard v. State, 358 So.2d 48, 49 (Fla. 4th DCA 1978) (where the district court found that the trial judge did not make an adequate finding of voluntariness where he had said "All right, I'll leave it to the jury."). Even though McDole has been modified so as not to require a trial court to specifically state that it finds a confession or statement to be "voluntary", inasmuch as it holds that a trial judge is not free to allow a jury to make the initial voluntariness determination, its holding remains viable. Thus, as in McDole, because it is uncertain from the instant record what the trial judge intended by his submit-it-to-the-jury statement, the unmistakable clarity standard is not met. As a result, we remand the trial court's ruling on appellant's motion to suppress for either a written order which states its conclusion on voluntariness unequivocally, or a new hearing on appellant's motion followed by such an order, whichever the trial court deems necessary. In so requiring, we do not require a written order on all voluntariness determinations, but do so here where the oral ruling left doubt.
We affirm appellant's remaining points on appeal except her point regarding the trial court's jury instruction that "if you find from the evidence that the defendant endeavored to evade arrest and prosecution by making a false statement, that fact may be considered as evidence of guilt."[4]
The State argues the propriety of this instruction by analogy to "flight" cases such as Bundy v. State, 455 So.2d 330 (Fla. 1984) in which the supreme court affirmed the trial court's instruction to the jury that it could consider Bundy's flight in determining guilt or innocence because there was sufficient evidence that Bundy attempted to avoid arrest.
However, as appellant points out, in Whitfield v. State, 452 So.2d 548 (Fla. 1984) the supreme court declined to extend the rationale behind permitting flight instructions. In Whitfield the trial court instructed the jury that Whitfield's refusal to submit to fingerprinting was a circumstance from which the jury could infer consciousness of guilt. The supreme court held that "[a]n instruction on flight, permitted in the limited circumstances where there is significantly more evidence against the defendant than flight standing alone, is an exception to the general rule prohibiting the trial court from commenting on the evidence." Id. at 549-50.
Assuming its voluntariness, appellant's false statement would have been admissible in the State's case as substantive evidence tending to affirmatively show a consciousness of guilt on appellant's part. Walker v. State, 495 So.2d 1240 (Fla. 5th DCA 1986). See also United States v. Holbert, 578 F.2d 128 (5th Cir.1978) (false exculpatory statements may be used ... as substantive evidence tending to prove guilt.). However, as the court stated in Jackson v. State, 435 So.2d 984, 985 (Fla. 4th DCA 1983), approved, Whitfield v. State, 452 So.2d 548 (Fla. 1984), "there is a great distinction between the admission of such relevant evidence and the court's instruction to the jury on how they should view the evidence."
In Jackson the district court reversed and remanded for new trial because the trial court erroneously instructed the jury that it could consider evidence that defendant changed his identity as evidence of a consciousness of guilt. In Redford v. State, 477 So.2d 64 (Fla. 3d DCA 1985), citing Whitfield and Jackson, the district court reversed and remanded for new trial because the trial court instructed the jury that it may consider evidence that defendant gave police a false name as evidence of guilt.
*746 The trial court's instruction here, though it referred to endeavoring to evade arrest by making a false statement, was not a permissible instruction on flight. The nature of the instruction is similar to those which compelled new trials in Redford and Jackson. We find the court's instruction in this case to be error, and we are unable to say beyond a reasonable doubt, as was implicitly determined in the abovementioned cases, that the error did not affect the verdict. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986). This is particularly true here where appellant relied at trial so heavily upon the theory of self defense. There is nothing in the record to dispel the doubt we see created by the judge's instruction that such might have improperly shifted the jury's focus exclusively to more basic notions of culpability. The issue was not whether appellant shot her husband; the issue was whether she was justified in doing so. Had the self defense evidence before the jury been less extensive, and thus the inferences favorable to appellant that the jury may have drawn less compelling, we may not have had a reasonable doubt that the erroneous instruction affected the verdict. This, however, was not the situation before us.
REVERSED and REMANDED for new trial.
WIGGINTON and BARFIELD, JJ., concur.
NOTES
[1] The trial court did not enter a written order on the motion to suppress. See Williams v. State, 397 So.2d 1044 (Fla. 4th DCA 1981) (where the district court, which ultimately found that the trial court's voluntariness ruling appeared from the record with unmistakable clarity, relinquished jurisdiction to the trial court after being apprised that no written order had been entered. Unable to find a written order, the trial court drafted one nunc pro tunc).
[2] Thomas v. State, 456 So.2d 454 (Fla. 1984).
[3] Her first statement to Lt. Redmond in the back of the police car that her ex-husband did the deed was an exculpatory statement.
[4] Appellant's trial counsel objected to this instruction at the charge conference, and renewed the objection following the court's jury instructions.