829 So.2d 238 (2002)
Juan Carlos, FABREGAS, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D00-3255.
District Court of Appeal of Florida, Third District.
August 14, 2002.
Rehearing and Rehearing Denied November 6, 2002.
*239 Bennett H. Brummer, Public Defender, and Marti Rothenberg, Assistant Public Defender, for appellant.
Robert A. Butterworth, Attorney General, and Jill K. Traina, Assistant Attorney General, for appellee.
Before SCHWARTZ, C.J., and GODERICH and FLETCHER, JJ.
Rehearing and Rehearing En Banc Denied November 6, 2002.
FLETCHER, Judge.
Juan Carlos Fabregas (the defendant) appeals his conviction of first-degree murder, alleging error in the exclusion of rebuttal testimony as well as improper prosecutorial argument. For the reasons stated below, we reverse and remand for a new trial.
Fabregas was tried and found guilty of the premeditated murder of Kim Mio whose body was found burning in a field in northwest Miami-Dade County on November 29, 1996. The medical examiner determined the cause of death to be repeated stab wounds. Partially burned items found near the body led investigators to Fabregas. Upon arriving at his home, the officers found Fabregas sound asleep on his couch and had some difficulty waking him up. The residence was cluttered and dirty. A crack cocaine pipe was found in the living room and a bottle of wine in the kitchen. The officers also discovered evidence of blood in the defendant's home, clothing and car. A Swiss army knife recovered from the residence was subsequently found to have the victim's blood on it. Upon this evidence, the defendant was arrested and charged with first-degree murder.
The defense presented at trial was that of insanity due to a condition known as drug-induced psychosis. In support of this defense, the defendant presented the testimony of three expert witnesses, a psychiatrist/addictionologist and two forensic psychologists, all of whom opined that the defendant had been in a drug-induced psychosis while committing the crime. In addition, Fabregas himself took the stand to describe his long-term drug addiction, a problem which began when he was 19 years of age.
Fabregas testified that he would routinely smoke crack cocaine for up to three days at a time and then would crash with *240 Rohypnol.[1] Defendant testified that the victim would often come to his house to smoke crack with him. As to the events leading up to the victim's death, Fabregas admitted that three days prior to his arrest, he and the victim had been smoking crack almost nonstop. At some point, defendant became enraged with the victim when he discovered that she had exchanged two rings, which he highly prized, for additional cocaine. According to the defendant, the two started screaming at each other and the victim attacked him. The defendant stated that he cut the victim lightly with his Swiss Army knife in order to get her to stop, but that when she instead reached for an ice pick to use against him, he stabbed her repeatedly until she passed out. Fabregas claims he then blacked out and did not awaken until a couple of hours later with a feeling of having done something wrong but not fully comprehending the seriousness of his actions. He went out to get more drugs. When he finally returned home, the defendant cleaned up the house and put the body and the bags of garbage in his car. He subsequently drove to a field where he dumped everything and set it on fire.
In order to rebut the drug-induced insanity defense, the State called Dr. Ansley, a neuropsychologist who disagreed with defense experts' conclusions on the issue of the defendant's sanity. Dr. Ansley acknowledged the existence of a condition known as drug-induced psychosis, but opined that defendant was not suffering from this condition at the time he committed the crime. Defense counsel attempted to demonstrate the witness' bias against the diagnosis by a series of questions on cross-examination. Dr. Ansley, however, continued to affirm her belief in the plausibility of the diagnosis in rare occasions. Defense counsel then asked her if she recalled a meeting in the parking lot of the courthouse during which she had been introduced to defense counsel by Dr. Haber, one of the defendant's experts, and upon being presented with the facts of the case (in order to determine her interest in consulting for the defense), she indicated that she did not believe in drug-induced psychosis. Dr. Ansley stated that she did not recall any such meeting and adamantly denied ever rejecting the existence of the diagnosis.
At this point, defense counsel requested permission to recall Dr. Haber to impeach Dr. Ansley's testimony. Initially, the trial court summarily denied the request; however, it later conducted a Richardson[2] hearing on the matter. A proffer of Dr. Haber's rebuttal testimony confirmed the meeting and Dr. Ansley's statement. The trial judge then inquired of defense counsel the reasons for his failure to disclose this evidence to the prosecution prior to trial. Defense counsel admitted that he did not list Dr. Haber as a rebuttal witness because he did not believe that rebuttal witnesses needed to be disclosed. This admission led the trial court to conclude that the discovery violation had been intentional. The court then proceeded to determine the issue of prejudice to the State. The prosecutor convincingly argued that the failure to disclose the information deprived the prosecution of the opportunity to investigate the matter and, if need be, obtain another expert. The trial court agreed that the prosecution case had been prejudiced, and consequently excluded Dr. Haber's rebuttal testimony.
*241 On appeal, the defendant initially argues that the failure to list Dr. Haber as a rebuttal witness did not constitute a discovery violation because the necessity of calling Dr. Haber in this capacity could not have been reasonably anticipated. Appellant contends the need did not arise until Dr. Ansley disputed the occurrence of any meeting and denied ever discrediting the diagnosis of drug-induced psychosis. As the State correctly points out, this argument was not presented to the court below. On the contrary, defense counsel explicitly admitted to the trial court that not disclosing the evidence was part of his trial strategy and instead argued that he was not required to disclose rebuttal evidence. Rebuttal witnesses, however, are not excluded from the disclosure requirements of Florida Rule of Criminal Procedure 3.220. See, e.g., Smith v. State, 500 So.2d 125 (Fla.1986); Lucas v. State, 376 So.2d 1149 (Fla.1979); Grant v. State, 474 So.2d 259 (Fla. 1st DCA 1985), rev. denied, 484 So.2d 8 (Fla.1986); Witmer v. State, 394 So.2d 1096 (Fla. 1st DCA 1981).
The State urges affirmance of the judgment on the ground that the excluded evidence concerned a collateral issue which did not affect the defendant's fundamental right to defend himself. We disagree. The excluded testimony went directly to the credibility of the sole prosecution expert witness to challenge the defendant's insanity defense. As such, we cannot conclusively determine that the evidence would not have affected the outcome of the trial. "Relevant evidence should not be excluded from the jury unless no other remedy suffices." Comer v. State, 730 So.2d 769, 774 (Fla. 1st DCA 1999), (citing Cooper v. State, 336 So.2d 1133 (Fla.1976), cert. denied, 431 U.S. 925, 97 S.Ct. 2200, 53 L.Ed.2d 239 (1977)). As stated in Wheeler v. State, 754 So.2d 827, 830 (Fla. 2d DCA 2000), "[w]hen a court determines that the State may be prejudiced because of a discovery violation, it should make every effort to find a remedy short of excluding the witness." Here, it does not appear that the trial court considered any other alternative to exclusion. The case could have been recessed for a few days in order to give the State an opportunity to investigate the matter and, if need be, obtain the services of another expert. Wheeler, 754 So.2d at 831 ("Procedural prejudice can often be cured by a continuance."). Another remedy could have been to declare a mistrial, giving the State the opportunity of retrying the defendant with the assistance of another expert. See Mattear v. State, 657 So.2d 46 (Fla. 4th DCA 1995); Rainey v. State, 596 So.2d 1295 (Fla. 2d DCA 1992). Under the circumstances, we find the exclusion of Dr. Haber's testimony too severe a remedy for the discovery violation herein. Patterson v. State, 419 So.2d 1120 (Fla. 4th DCA 1982).
Because we are remanding this case for a new trial, we briefly address one other issue. During closing argument, the prosecutor referred to the defendant's experts as a "wolving pack of wolves what attack cases as a team [sic]." The trial court correctly sustained defense counsel's objection to the statement. See Kennerdy v. State, 749 So.2d 507 (Fla. 2d DCA 1999); Ross v. State 726 So.2d 317 (Fla. 2d DCA 1998). We trust this argument will not recur on retrial.
For these reasons, we reverse the defendant's judgment of conviction and remand for a new trial.
Reversed and remanded.
NOTES
[1] Rohypnol is a hypnotic drug which is illegal in the United States but which was prescribed for defendant in Panama.
[2] Richardson v. State, 246 So.2d 771 (Fla. 1971).