952 So.2d 1275 (2007)
Jose BENITEZ, Appellant,
v.
STATE of Florida, Appellee.
No. 2D05-4325.
District Court of Appeal of Florida, Second District.
April 13, 2007.
*1276 James Marion Moorman, Public Defender, and Judith Ellis, Assistant Public Defender, Bartow, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Chandra Waite Dasrat, Assistant Attorney General, Tampa, for Appellee.
WHATLEY, Judge.
Jose Benitez appeals his judgments for five counts of burglary of a dwelling, five counts of grand theft, petit theft, and trespass. Benitez entered a plea to the charges after reserving his right to appeal the denial of his motion to suppress.[1] In his motion to suppress and on appeal, Benitez argues that police did not have reasonable suspicion to stop him and that he did not knowingly and intelligently waive his Miranda[2] rights. We conclude that police did have reasonable suspicion to stop him and affirm as to that claim. However, we reverse because the order denying the motion to suppress suggests that the trial court may have applied an incorrect standard in determining whether Benitez knowingly and intelligently waived his Miranda rights.
The trial court denied the motion to suppress Benitez's confession based on its finding that diminished capacity is not a recognized defense, "The State elicited testimony that the Court finds indicates the defendant is of diminished mental capacity. Diminished Capacity is not a defense recognized in Florida Law." However, Benitez never argued that diminished capacity was the correct test in determining whether he knowingly and intelligently waived his Miranda rights. The only reference to diminished capacity in the record occurs during the State's cross examination of *1277 Benitez's expert witness, Dr. Tracy Henley. The State asked Dr. Henley about a conclusion in her report that, under the totality of circumstances, it is likely that Benitez had a diminished ability to make a valid waiver of his Miranda rights.
We note that a defendant's diminished mental capacity, along with improper coercive police conduct, may be relevant to whether the defendant voluntarily waived his Miranda rights, but his diminished mental capacity is not relevant to whether he knowingly and intelligently waived his Miranda rights. See State v. Stewart, 588 So.2d 1063 (Fla. 3d DCA 1991). At the hearing on the motion to suppress, Benitez's counsel made it clear that he was arguing that Benitez did not knowingly and intelligently waive his rights and that he was not contending Benitez's waiver was not voluntary. Consequently, the trial court should have examined factors relevant to whether Benitez knowingly and intelligently waived his rights.
In Ramirez v. State, 739 So.2d 568, 575-76 (Fla.1999), the Florida Supreme Court held that the following factors must be considered in determining whether a defendant knowingly and intelligently waived his Miranda rights: 1) the manner in which the Miranda rights were given, including any trickery or cajoling; 2) the defendant's age, intelligence, background, and experience; 3) whether the juvenile's parents were contacted and given an opportunity to speak with him before questioning; 4) the location of the questioning; and 5) whether police obtained a written waiver of the Miranda rights.
At the hearing on Benitez's motion to suppress, Detective James Sheely testified regarding the first and fourth factors in Ramirez. Detective Sheely testified that he interviewed Benitez at the police station after he had been taken into custody for burglary. Detective Sheely read the Miranda rights form to Benitez, and after reading each right to Benitez, he paused and made eye contact with Benitez to make sure he was following. Benitez appeared to understand what was going on, did not appear to be puzzled, did not appear to have any difficulty understanding the words he was using, and did not ask any questions. After Detective Sheely finished reading the Miranda form, Benitez specifically told him that he understood the Miranda rights, and Benitez also signed the Miranda form, acknowledging that he understood those rights.[3] Detective Sheely testified that the interview was very "low key" and "laid back" and that Benitez's responses to his questions were "logical."
Benitez has never asserted, and there was no evidence presented at the suppression hearing, that police used threats, coercion or trickery to obtain the confession which the supreme court has stated is a critical factor in determining whether the Miranda waiver is knowing, voluntary and intelligent. Id. at 576. Further, the trial court found that there was no "coercion on the part of the police and that the detective did not take advantage of the defendant."
Evidence was also presented regarding the second factor in Ramirez: Benitez's age, intelligence, background, and experience.[4] Dr. Henley testified that, although *1278 Benitez was only three months shy of his eighteenth birthday, his test scores indicated that, at best, he was in the mild mental retardation range. Benitez had completed the seventh grade in school.
Concerning the third factor, Detective Sheely testified that Benitez did not have an opportunity to speak with a parent before his interrogation. Detective Sheely attempted to contact Benitez's parent and, when he was unsuccessful, he attempted to contact an aunt with whom Benitez was living. His attempts to contact the aunt were also unsuccessful. However, the situation in the present case is different from that in Ramirez, where the videotape of the confession revealed that police began to ask the appellant about the location of his parents after he had confessed to the crime. Here, Detective Sheely attempted to contact a relative of Benitez before he questioned him about the crime. Id. at 578 n. 8. The final factor in Ramirez, whether police obtained a written waiver of the Miranda rights, was met in this case. Detective Sheely obtained a written waiver of the Miranda rights before he began questioning Benitez.
Unfortunately, there is no indication in the trial court's order that it weighed any of the above factors in a "totality of the circumstances" analysis before denying Benitez's motion to suppress. Id. at 575. Although the trial court stated in its order that it accepted the defense expert's testimony, the court went on to find that Benitez's confession was admissible pursuant to existing law: "Dr. Henley is an expert in the subject about which she testified and the court accepts her opinions but is not persuaded that the defendant's confession is not proper pursuant to existing law."
The defense presented the testimony of Dr. Henley, whose practice consists primarily of conducting psychological assessments. Dr. Henley conducted tests to determine Benitez's ability to understand the Miranda warnings and his IQ, which as noted earlier was in the mild mental retardation range. Dr. Henley testified Benitez correctly understood the Miranda warning that anything he said could be used against him in court. He also understood that if he could not afford a lawyer, one would be appointed for him.
Conversely, Dr. Henley testified that Benitez did not understand the statement that he had the right to remain silent. He also did not understand the Miranda warning, "You're entitled to consult with an attorney before interrogation and to have an attorney present at the time of the interrogation." Dr. Henley testified that Benitez said this meant "you can get a lawyer to speak first." In Dr. Henley's opinion, Benitez had difficulty understanding the words "interrogation" and "entitled."
However, when Dr. Henley tested Benitez's understanding of these Miranda rights, she used a form which differed from the one used by Detective Sheely. The form used by Detective Sheely did not contain the words "interrogation" and "entitled." His Miranda form contained the following language, "You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning if you wish." The form further warned, "If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer." We note that, because Dr. Henley's form did not contain this last sentence, she never tested Benitez's ability to comprehend its meaning.
We cannot determine from the language used in the order denying the motion to suppress whether the trial court, while accepting Dr. Henley's opinion of Benitez's *1279 test results, nevertheless found that Benitez did understand the Miranda rights as they were explained to him in simpler terms by the detective conducting the interview. See Morton v. State, 789 So.2d 324, 330 (Fla.2001) (explaining that "uncontroverted expert opinion testimony may be rejected where it is difficult to square with the other evidence in the case."). It is possible that the trial court considered the detective's testimony, along with Benitez's own verbal and written acknowledgment that he understood his rights, and found that Benitez did understand his Miranda rights. On the other hand, it is also possible that the trial court accepted Dr. Henley's opinion as accurate that Benitez did not understand those rights and applied the incorrect standard of "diminished mental capacity" to its finding.
Because the trial court's order denying Benitez's motion to suppress and its failure to make critical Ramirez determinations of fact may have resulted from the trial court's erroneous view of the law, we reverse and remand for either a written order which makes the required findings and conclusion as to whether Benitez knowingly and intelligently waived his Miranda rights or a new hearing and an order, whichever the trial court deems necessary. See Phillips v. State, 707 So.2d 774 (Fla. 2d DCA 1998) (holding that where trial court erred in applying established law to the facts of the case, it must be reversed and remanded for a new hearing to give the trial court an opportunity to address the issue); Wright v. State, 766 So.2d 467 (Fla. 1st DCA 2000) (where trial court failed to address whether appellant withdrew his consent to search, case reversed and remanded for trial court to conduct new hearing on the issue); Simpson v. State, 562 So.2d 742 (Fla. 1st DCA 1990) (concluding that where it was uncertain from the record what trial court intended in its ruling determining whether appellant's confession was voluntary, case had to be reversed and remanded for either a written order stating its conclusion or a new hearing on appellant's motion).
Accordingly, we affirm in part, reverse in part, and remand with directions.
NORTHCUTT, J., Concurs in part and Dissents in part.
SILBERMAN, J., Concurs specially with opinion.
NORTHCUTT, J., Concurring in part and Dissenting in part.
It is obvious that Benitez's convictions must be reversed. It is also obvious, at least to me, that we must direct the circuit court to discharge him. The evidence presented at the hearing on the motion to suppress proved beyond dispute that Benitez did not understand his Miranda rights when he waived them, and the circuit court expressly accepted the psychologist's opinion to that effect. That being the case, the court's denial of the motion to suppress was a purely legal error that we are duty-bound to correct. Therefore, I dissent from my colleagues' decision to, instead, remand for additional findings or another hearing on the motion.
At the hearing on Benitez's motion to suppress, the State bore the burden of establishing that Benitez validly waived his constitutional rights under Miranda before making his statements to the detective. Ramirez v. State, 739 So.2d 568, 575 (Fla.1999). Because Benitez was a juvenile, this burden was "heavy." Id.
Ramirez instructs that the validity of a Miranda waiver involves two separate inquiries: First, the waiver must have been voluntary, in that it was "the product of free and deliberate choice rather than intimidation, coercion, or deception." Second, the suspect must have waived his *1280 rights "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Id. (quoting Moran v. Burbine, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986)). A court may conclude that a suspect validly waived his Miranda rights only if the totality of the circumstances surrounding the interrogation demonstrate both that the suspect made an uncoerced choice and that he did so with the requisite level of comprehension. Id.
Benitez did not contend that his Miranda waiver was coerced or that it was involuntary for any other reason. Thus, the question before the circuit court was whether the State proved that Benitez waived his rights knowingly and intelligently, i.e., with a full awareness of both the nature of the rights being abandoned and the consequences of the decision to abandon them.
In Ramirez, a first-degree murder case, the court examined the validity of a Miranda waiver by a seventeen-year-old boy. When undertaking its "totality of the circumstances" analysis, the court considered the following factors to be relevant: (1) the manner in which the Miranda warning was administered; (2) the suspect's age, experience, background and intelligence; (3) the fact that the suspect's parents were not contacted and the juvenile was not given an opportunity to consult with his parents before questioning; (4) the fact that the questioning took place at the station house; and (5) the fact that the interrogators did not secure a written waiver of the Miranda rights at the outset. Id. at 576.[5] Some of those factors are applicable to this case.
First, the manner in which the Miranda warning was administered: The State's sole witness on the validity of Benitez's Miranda waiver was the detective who interrogated him. The detective recounted that he gave Benitez the Miranda warnings according to his usual practice. Keeping his tone "low key," he sat at a table with Benitez and read him the warnings aloud. After reading the warning related to each right, the detective paused and looked to Benitez for some indication that he was following along and that he understood the warning. According to the detective, Benitez asked no questions and seemed to understand. After reading the warnings in this manner one time through, the detective had Benitez sign the waiver on the form from which he had read.
The defense presented the testimony of Dr. Tracy Henley, a clinical psychologist who had met with Benitez for three hours over two sessions and tested him for intelligence and comprehension. Dr. Henley's testing revealed that Benitez was severely hampered in his ability to comprehend language. His verbal IQthe measure of his ability to express himself and understand languagewas a mere 42, which placed him in the moderate-to-severe mental retardation range. According to Dr. Henley, Benitez could be made to understand new concepts, but only if they were explained to him four or five times. The State did not challenge this evidence, let alone refute it. And, clearly, this evidence proved that the manner in which the Miranda warning was administered to Benitez was insufficient to give him a full awareness of *1281 either the nature of the rights being read to him or the consequences of abandoning them.
Second, the suspect's age, experience, background and intelligence: At the time of his interrogation, Benitez was seventeen years, nine months old. He had no prior arrest history or other exposure to law enforcement or the criminal justice system. He had completed the seventh grade. As mentioned, Dr. Henley measured Benitez's verbal IQ at 42. His non-verbal IQ was 64, in the mild mental retardation range. His overall composite IQ was 49. On another IQ test that was designed to take into account that he was bilingual, Benitez scored 68, indicating mild mental retardation.
The third Ramirez factor was also present here. The detective was unsuccessful in his attempt to contact Benitez's parents before questioning him. Therefore, Benitez had no opportunity to consult with his parents before questioning or to benefit from their assistance in understanding his rights.
The fourth factor, the fact that the questioning took place at the station house, has more to do with the issue of voluntariness, which was not challenged here. And, unlike the case in Ramirez, here the detective did obtain Benitez's signature on the written Miranda waiver before questioning him.
In addition to the foregoing, Dr. Henley tested Benitez specifically for his understanding of the Miranda rights themselves. She found that Benitez basically understood the right to have an attorney appointed. Benitez characterized the warning that anything he said could and would be used against him as meaning "[a]nything I say, likesaying something bad or threatening, they can use against me." He misunderstood the right to consult an attorney before being questioned as "[y]ou can get a lawyer to speak first. I don't know when. The same day or not." He believed the right to remain silent was, instead, a prohibition. When asked to paraphrase this right, he responded "I ain't gotI ain't got rights to speak to officers. I can't say nothing. I'm not allowed to." Dr. Henley noted that during her sessions with him, Benitez would not volunteer that he did not understand something; she would have to prompt him.
Dr. Henley concluded that when Benitez was questioned by the detective, he did not have an adequate grasp of the Miranda rights to intelligently waive them. She had been present in the courtroom when the detective testified about his interrogation of Benitez. The detective's testimony did not change her opinion, she said. Rather, it reinforced it.
The State did not rebut Dr. Henley's testimony other than to cross-examine her to establish that some of the language in the Miranda waiver that the detective read to Benitez was somewhat simpler than the terms in the instrument Dr. Henley used to test Benitez's understanding of the Miranda rights. Even so, she said, Benitez did not understand the rights he was waiving.
In sum, the circuit court received uncontroverted proof that Benitez, a juvenile and a neophyte in the criminal justice milieu, suffered profound intellectual deficits that rendered him incapable of grasping new concepts unless they were explained to him four or five times. It was further uncontroverted that, months after his arrest and the commencement of his prosecution, Benitez continued to seriously misunderstand the Miranda rights. Against these established facts, the State offered only (1) the testimony of the detective that he had read the warnings to Benitez once, and that from Benitez's facial expression *1282 (or lack thereof) the detective had concluded that Benitez seemed to understand; and (2) the fact that the warning actually given to Benitez employed some simpler language than one of the tests administered to him.
Even ignoring the expert psychologist's opinion on the ultimate issue, it is plain to see that the State fell far short of its burden to prove that Benitez validly waived his Miranda rights. As Dr. Henley observed, the detective's testimony actually reinforced her conclusion that he did not. When the detective looked to Benitez for an indication that he understood the Miranda rights, Benitez actually believed that he understood them. And even if he had known that he did not understand the rights, he would not have spoken up.
The fact that some of the terms in the Miranda warning given to Benitez were relatively simpler than those used in Dr. Henley's testing instrument merely suggested the possibility that Benitez might have been able to understand the simpler terms. This possibility was wholly untested and, as such, it amounted to simple speculation. Moreover, the State did not even attempt to rebut the psychologist's finding that Benitez's verbal IQ was so low that he required four or five repetitions before he was able to grasp new concepts. The detective acknowledged that he read the Miranda warning to Benitez only once. Thus, notwithstanding the relative complexity of the instrument that was later employed to test Benitez's understanding of specific rights, it is clear that the State failed to satisfy its burden to prove that Benitez waived his rights "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Ramirez, 739 So.2d at 575.,
Based on the evidence before it, the circuit court had no choice other than to accept Dr. Henley's opinion that Benitez did not understand his Miranda rights when he waived them. I disagree with the majority's view that there were conflicts in the evidence that would have permitted the circuit court to conclude that Benitez understood that he had the right to an attorney. But if the court had done so, it necessarily would have rejected Dr. Henley's opinion that he did not. Instead, the court expressly accepted her opinion: "Dr. Henley is an expert in the subject about which she testified and the court accepts her opinions, but is not persuaded that the defendant's confession is not proper pursuant to existing law." Accordingly, the law required the suppression of Benitez's statements, because a court may conclude that a suspect validly waived his Miranda rights only if the totality of the circumstances surrounding the interrogation demonstrate both that the suspect made an uncoerced choice and that he did so with the requisite level of comprehension. Ramirez, 739 So.2d at 575.
Nevertheless, the circuit court denied the motion to suppress because it made two legal errors. First, it surmised that because Florida does not recognize a defendant's diminished mental capacity, i.e., an abnormal mental condition other than legal insanity, as a defense to a specific intent crime, Benitez's inability to understand his Miranda rights was not a basis for excluding his confession. As the majority notes, the circuit court was wrong; the prohibition against submitting evidence of a defendant's diminished mental capacity as a defense to the charges against him does not preclude consideration of that factor when assessing the validity of his Miranda waiver. Second, the circuit court pointed out that the detective who interrogated Benitez did not engage in any coercion, intimidation or trickery, citing Colorado v. Connelly, 479 U.S. 157, 107 S.Ct. *1283 515, 93 L.Ed.2d 473 (1986), and State v. Stewart, 588 So.2d 1063 (Fla. 3d DCA 1991). But those cases stand for the proposition that, absent such impropriety by the interrogator, a suspect's mental deficiency standing alone does not render his Miranda waiver involuntary. Again, Benitez never contended that his waiver was involuntary. He challenged it on the separate ground that it was not knowing and intelligent.
It is telling that both of the circuit court's legal theories, albeit mistaken, were consistent with the court's expressed acceptance of Dr. Henley's opinion that Benitez did not understand his Miranda rights when he waived them. In other words, incorrect as the circuit court's legal reasoning was, nothing about it could account for the majority's avowed confusion about what the court was thinking. To the contrary, the court's reasoning was crystal clear: it accepted the expert's opinion that Benitez did not understand his Miranda rights when he waived them, but mistakenly held that the motion to suppress must be denied under two legal principles that, in truth, did not apply.
This was not the situation in the cases cited by the majority to justify its remand for additional proceedings on the motion to suppress. In each of those cases, the circuit court's legal error led to its failure to make a critical determination of fact. Thus, in Phillips v. State, 707 So.2d 774 (Fla. 2d DCA 1998), the circuit court failed to determine whether the suspect had withdrawn his consent to a search because the court incorrectly believed that the law did not recognize a suspect's right to withdraw his consent. Likewise, in Wright v. State, 766 So.2d 467 (Fla. 1st DCA 2000), the circuit court wholly failed to address or make findings regarding the defendant's claim that he withdrew his consent to a search. In Simpson v. State, 562 So.2d 742 (Fla. 1st DCA 1990), the trial court failed to determine whether the defendant had been properly Mirandized before making statements to officers, and improperly left it to the jury to decide whether the statements were voluntary.
Unlike those cases, in which the absence of necessary fact determinations required remands for further findings or hearings, in this case the circuit court clearly and explicitly accepted the expert's opinion that Benitez did not understand his Miranda rights when he waived them. This single determination obviates any need for a remand, because a court may not find that a suspect validly waived his Miranda rights unless he did so with the requisite level of comprehension, i.e., "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Ramirez, 739 So.2d at 575 (quoting Moran v. Burbine, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986)).
The law requires that Benitez's motion to suppress be granted and that he be discharged. We are obliged to grant that relief, and nothing less.
SILBERMAN, Judge, Specially concurring.
I concur in the decision to affirm the trial court's finding that Benitez was not illegally detained by the police. I also concur in the decision to reverse and remand for the trial court to clarify its findings and conclusions as to the Miranda waiver issue. I write to address the point raised by the dissent that we should reverse with instructions that Benitez should be discharged.
The State met its initial burden by presenting evidence that Benitez knowingly, intelligently, and voluntarily waived his Miranda rights. The defense presented contrary evidence, primarily through Dr. *1284 Henley and Benitez. Dr. Henley acknowledged that in evaluating whether Benitez understood the Miranda warnings, she used a Miranda form which differed from the form that the police used with Benitez. Dr. Henley admitted that the two forms differed in wording as to several key terms. The police warnings were "more ordinary, less sophisticated" than the wording contained in Dr. Henley's form.
Dr. Henley stated that during her evaluation, Benitez responded appropriately in several respects as to the meaning of the Miranda warnings. Concerning certain sections of the warnings, he "exhibited sufficient understanding on the purposes, rationale, and points of the stories with regards to Miranda." However, she did not believe that Benitez had a sufficient understanding of the Miranda warnings such that he could intelligently waive his rights Dr. Henley also answered the trial court's questions relating to Benitez's competence to proceed to trial.
In the order denying suppression, the trial court noted the detective's testimony that during the interrogation, Benitez was cooperative, unafraid, and gave the appearance of understanding the Miranda warnings. Benitez spoke English, and there was no language barrier to effective communication between him and the detective. The detective read the Miranda warnings to Benitez and made eye contact with him to be sure that he understood the warnings. Benitez indicated that he did not want a lawyer, and he spoke with the detective. The detective said that the interrogation was "laid-back and low key" and that he did not pressure Benitez into signing the waiver form.
As to Benitez's testimony, the court commented that he understands English better than Spanish. While he recalled speaking with the detective, he did not recall that he had been read his Miranda rights or had signed the Miranda waiver form. The court observed that "Mr. Benitez appears to have a problem in that his memory is deficient."
The court next summarized Dr. Henley's testimony, as follows:
Dr. Henley, a Ph.D. in Clinical Psychology, testified that the defendant is mildly retarded both verbally and mentally. She testified that he did not understand the Miranda right to an attorney when she tested his comprehension. She also testified that the defendant was under duress at the time of the confession. She testified that he was and continues to be incompetent to proceed to trial but that he is capable of being restored to competency for trial purposes.
The trial court then ruled on the motion to suppress and made the following findings:
Dr. Henley is an expert in the subject about which she testified and the court accepts her opinions but is not persuaded that the defendant's confession is not proper pursuant to existing law. The State elicited testimony that the Court finds indicates the defendant is of diminished mental capacity. Diminished Capacity is not a defense recognized in Florida law. The Court further finds no illegal detention of the defendant or coercion on the part of the police and that the detective did not take advantage of the defendant. Accordingly, the Motion is Denied.
(Emphasis added.)
In context, it seems unlikely, or at least unclear, that the trial court's acceptance of Dr. Henley's opinions was intended to be a complete adoption of her conclusions. For example, the court noted Dr. Henley's opinion that Benitez was under duress at the time of the confession, but the court specifically found to the contrary. Further, *1285 the court acknowledged Dr. Henley's opinion that when she tested Benitez, he did not understand the Miranda right to an attorney, but the court did not discuss Dr. Henley's testimony that Benitez did not understand the Miranda warnings when they were read to him by the detective.
The court also did not address Dr. Henley's testimony that during her evaluation, she used a Miranda form that was different and apparently more difficult to comprehend than the form used by the police. Further, the court did not discuss Dr. Henley's testimony that Benitez understood at least certain portions of the Miranda warnings. On the other hand, the court did not make any finding as to whether it was accepting or rejecting the detective's testimony that Benitez appeared to understand the Miranda warnings. The court did, however, specifically state that it was not persuaded that Benitez's confession was improper.
Ultimately, Benitez may be entitled to discharge. However, it is for the trial court to make appropriate findings based on the evidence and the applicable law and to provide an order that is capable of meaningful review. Because the trial court's order contains conflicting and inconsistent statements and because it appears that the court may have applied the incorrect legal standard, I agree with the majority opinion that remand to the trial court is necessary and appropriate for the court to clarify its findings and conclusions.
NOTES
[1] A motion to suppress was not filed in the trespass case.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] The form also contains the following statement, "I understand and know what I am doing."
[4] We are aware of the statements by Benitez's attorney at the sentencing hearing that Benitez had a criminal record but it was "not extensive." However, because this evidence was not presented at the sentencing hearing, it cannot be considered in our analysis. Ramirez, 739 So.2d at 577 n. 5.
[5] The court also had gleaned from the record that the boy had learning disabilities; at age seventeen, he was performing academically at only an eighth or ninth grade level; and he had an emotional, intellectual, and behavioral age of only thirteen or fourteen. However, the court did not consider these factors in assessing the validity of the boy's Miranda waiver because they were not developed at the suppression hearing. Ramirez v. State, 739 So.2d 568, 577 n. 5 (Fla.1999).