LEVINE, J.
 

 The issue presented in this case is whether the trial court erred in not allow
 
 *1018
 
 ing appellant to introduce a witness as part of his defense after a Richardson
 
 [1]
 
 inquiry. We find that the trial court should have considered less extreme alternatives before excluding the testimony of the defense witness. With respect to appellant’s conviction for first degree murder with a firearm, the trial court’s eiror was not harmless. The error was, however, harmless as to appellant’s conviction for grand theft of an automobile. We, therefore, affirm in part and reverse in part.
 

 Facts
 

 The State presented evidence that a cyclist in Hollywood was run off the road by a stolen car. The cyclist testified that a man got out of the car wearing a ski mask and wielding a gun. The assailant stole the cyclist’s pants, wallet, cell phone, and keys. The cyclist described that man as approximately 5'7" tall with his ham “tied up” in dreadlocks.
 
 [2]
 

 Later the same night, the same car drove up to a pedestrian in Dania Beach. One man jumped out of the car and chased the pedestrian, who fell as he attempted to flee. Witnesses to the crime heard the assailant fire at least two shots at the pedestrian. After the shooter sped away in the car, the pedestrian stood up and tried to walk down the street, but he eventually collapsed and died. As in the alleged robbery of the cyclist, the assailant stole the pedestrian’s pants. One witness described the shooter as roughly 5'7" with a slim build. Another witness described the shooter as thin with “little dreadlock hair.”
 

 The police found the car used in the robbery and murder in a park near appellant’s house. Inside the car, the police found a summons bearing appellant’s name. A subsequent search of appellant’s house uncovered speakers and tools that had been removed from the car. Finally, the cell phone taken from the cyclist was used to call both appellant’s mother and friends. Cell phone records also established that appellant’s own phone was used in the vicinity of the crimes.
 

 Five weeks after the crimes, the police interviewed appellant regarding his involvement. Appellant was sixteen years old and his hair was short. Appellant’s statement to the police was long, rambling, and contradictory. Initially, appellant denied any involvement in the offenses and claimed he had been elsewhere with friends that evening. When told that his summons had been found in the car, appellant explained that an acquaintance named Walt gave him a ride that evening. Walt allegedly gave appellant the speakers and tools found in his room. After being informed that his cell phone records placed him in the vicinity of the robbery and murder, appellant admitted being in the car when Walt robbed the Hollywood cyclist, but he denied driving the car. Later, appellant said he jumped into the driver’s seat after Walt robbed the cyclist.
 

 With respect to the Dania Beach murder, appellant stated that Walt drove to Dania Beach because of a “money thing”— someone had “slipped” Walt. At first, appellant maintained he was in the car when Walt shot the .pedestrian. Appellant stated that he was upset with Walt for getting him into that “situation.”
 

 The police were suspicious of appellant’s version of events. They said they believed a third person had been in the car, and appellant’s statement was contradictory on that issue. One of the interviewing detee-
 
 *1019
 
 tives told appellant that the police believed he, not Walt, was the shooter. The detective said he believed that Walt probably told appellant to “jump out of the car and go get him” and that the shooting was unintentional: “Maybe the guy started to struggle or tried to grab the gun and it went off.”
 

 Not long thereafter, appellant related a different version of the Dania Beach shooting that seemed to follow the detective’s version of events. Appellant explained that Walt gave him the gun, saying, “[Y]ou can’t be with me doing none all.” Appellant said he chased the pedestrian, but robbery and murder were not his intent. Appellant claimed that the gun discharged accidently when the victim grabbed his arm. According to appellant, Walt robbed the pedestrian after appellant returned to the car.
 

 At trial, a detective testified that he did not believe appellant to have any intellectual deficits and that appellant communicated normally during the interview. In rebuttal, the defense sought to introduce the testimony of a psychological expert, Dr. Butts, to highlight the “susceptibility” of a sixteen year old to suggestion when being interviewed by three detectives. Noting that appellant confessed to the shooting in a manner similar to that suggested by detectives, the defense argued that the testimony of Dr. Butts was admissible to “impeach the integrity of that confession.” The defense also argued that it should be entitled to present evidence to rebut the detective’s testimony that appellant was “normal.” The State objected, arguing that this evidence was a “back door” attempt to argue a diminished capacity defense.
 

 Because Dr. Butts was not listed as a defense witness, the trial court conducted a
 
 Richardson
 
 hearing. The court concluded that the failure to list Dr. Butts as a witness was a discovery violation. Additionally, the court determined that Dr. Butts’s testimony was irrelevant. In barring Dr. Butts from testifying, the court stated as follows:
 

 So, I am concerned as to exactly what testimony she would be able to give in this matter other than maybe that he had some diminished capacity, intellectual deficit, something along those lines.
 

 However, if that’s your intent, you know, it seems to me you’re incumbent to list that person as a witness, to subpoena that witness for trial, and that wasn’t done. I know you’re indicating that the State knew about this report, you sent it to the State over a year ago, therefore you’re alleging there is no prejudice, and that very well may be the case, that the State knew about the report.
 

 However, there are other reports that you’re indicating and other witnesses that you’re indicating that could have counteracted the testimony of Dr. Butts, Dr. Brannon specifically, maybe others, I do not know.
 

 It seems to me that the State would have and should have had the opportunity to go ahead and subpoena those people for trial so they would be in a position where they don’t know if they’re available or not.
 

 So I believe it is a discovery violation. I do believe that the State is prejudiced by it. But the other issue is I don’t really know what the witness would testify to other than a defense that’s not known by this jury so I’m not going to allow it.
 

 In response, the defense explained that Dr. Butts would be available to testify without a subpoena. Moreover, defense counsel stated that he saw the State’s psychological expert, who had previously eval
 
 *1020
 
 uated appellant’s mental capacity, in the courthouse earlier that day. Defense counsel suggested that the State’s expert would be easy to contact and might be available to testify in rebuttal. The trial court replied, “Well, that’s not the issue,” and excluded the evidence.
 

 Richardson
 
 HeaRing ANALYSIS
 

 Richardson
 
 sets out a three-part test that a trial court must apply before a party may be sanctioned for a discovery violation. The “trial court’s discretion [to sanction a party for violating the rules of discovery] can be properly exercised only after an adequate inquiry is made into three areas: (1) whether the discovery violation was willful or inadvertent; (2) whether it was trivial or substantial; and (3) whether it had a prejudicial effect on the opposing party’s trial preparation.”
 
 [3]
 

 McDuffie v. State,
 
 970 So.2d 312, 321 (Fla. 2007) (citing
 
 Richardson,
 
 246 So.2d at 775),
 

 Where the discovery violations are committed by a defendant, however, “special importance attaches to the trial court’s inquiry into alternative sanctions because exclusion of exculpatory evidence implicates the defendant’s constitutional right to defend himself.”
 
 Id.
 
 at 322;
 
 see also Jenkins v. State,
 
 872 So.2d 388,
 
 389
 
 (Fla. 4th DCA 2004),
 
 cited with approval in McDuffie,
 
 970 So.2d at 321 (stating that few rights are “more fundamental than the right of an accused to present witnesses in his or her own defense”).
 

 In
 
 Shepherd v. State,
 
 453 So.2d 215 (Fla. 5th DCA 1984), the court held that exclusion of relevant argument and testimony regarding the defendant’s insanity defense was reversible error where the trial court failed to conduct a
 
 Richardson
 
 hearing, especially where the State presented no practical evidence of prejudice. Likewise, in
 
 Fabregas v. State,
 
 829 So.2d 238, 241 (Fla. 3d DCA 2002), the court held that exclusion of a defense rebuttal expert was too severe, even though the State was prejudiced, because relevant evidence should not be withheld from the jury unless no other remedy is available.
 

 In this case, the trial court erroneously concluded that Dr. Butts’s testimony was irrelevant. A confession, which is the product of a confused mind or lack of mental capacity, “presents an issue of credibility for the jury to determine.”
 
 De-Coningh v. State,
 
 433 So.2d 501, 503 (Fla. 1983). Thus, once a confession has been admitted,
 

 the defendant is entitled to present to the jury
 
 evidence pertaining to the circumstances under which the confession was made.
 
 The reason for this rule is that it is the jury’s function to determine the weight to be accorded the confession in determining guilt.... The defendant’s state of mind is relevant to this latter inquiry.
 

 Palmes v. State,
 
 397 So.2d 648, 653 (Fla. 1981) (emphasis added). The trial court’s determination that Dr. Butts’s testimony was irrelevant overlooked appellant’s entitlement to present such evidence and, accordingly, was error.
 
 [4]
 

 In the face of a discovery violation, exclusion of evidence is a remedy of
 
 *1021
 
 last resort. “[W]here as here the violation has not been found to be willful or blatant, [exclusion] is generally too severe ‘when the only prejudice to the State is its inability to obtain evidence for impeachment of the witness.’ ”
 
 McDuffie,
 
 970 So.2d at 321 (quoting
 
 Grace v. State,
 
 832 So.2d 224, 227 (Fla. 2d DCA 2002)). Thus, “[w]hen exculpatory evidence is sought to be introduced in violation of the discovery rules, and remedies which would allow the trial to proceed are insufficient, the proper course of action is to declare a mistrial” rather than exclude relevant evidence.
 
 Mattear v. State,
 
 657 So.2d 46, 47 (Fla. 4th DCA 1995);
 
 see also Roopmarine v. State,
 
 18 So.3d 1192 (Fla. 4th DCA 2009) (“We agree that error occurred ... where the prejudice to the state could have been cured by another remedy short of excluding the witness.”).
 

 The trial court found that the State was prejudiced in this case because it was not given an opportunity to depose Dr. Butts and subpoena rebuttal witnesses. However, the court never inquired of the State as to the availability of a State expert witness nor as to the possibility of taking Dr. Butts’s deposition before testifying. The trial court also failed to consider any lesser sanctions, such as a continuance or a mistrial, before excluding Dr. Butts from testifying.
 

 As a result of the court’s failure to investigate the efficacy of less severe sanctions, we cannot say exclusion of Dr. Butts’s testimony was justified and that no other adequate remedy was available. Accordingly, we conclude that the trial court erred by failing to conduct a complete
 
 Richardson
 
 inquiry and by failing to consider sanctions less extreme than exclusion of Dr. Butts’s testimony.
 

 Harmless ERror Analysis
 

 The erroneous exclusion of exculpatory defense evidence following a
 
 Richardson
 
 hearing is subject to harmless error analysis.
 
 [5]
 

 M.N. v. State,
 
 724 So.2d 122, 123-24 (Fla. 4th DCA 1998). In such
 
 *1022
 
 cases, “the reviewing court must determine whether the erroneously excluded evidence could have had an effect on the jury favorable to the defendant, or, in other words, could the improper exclusion have reasonably affected the outcome of the case.”
 
 Johnson v. State,
 
 728 So.2d 1204, 1205 (Fla. 3d DCA 1999). In the present case, appellant’s contradictory confession was the key piece of evidence that directly linked him to the Dania Beach murder. The jury was instructed that such a statement must “be considered with caution and be weighed with great care to make certain it was freely and voluntarily made.” The credibility of that statement was, therefore, the main issue in the trial.
 

 We believe there is a “reasonable possibility” that the exclusion of Dr. Butts’s testimony “contributed to the conviction” for first degree murder.
 
 State v. DiGuilio,
 
 491 So.2d 1129, 1138 (Fla.1986). Accordingly, we reverse appellant’s conviction for murder and remand for a new trial on that count. However, we affirm appellant’s conviction for grand theft of an automobile because the State presented evidence in addition to the video statement implicating appellant, and the exclusion of Dr. Butts’s testimony would be harmless as to this charge.
 

 Conclusion
 

 Application of
 
 Richardson’s
 
 three-part test is insufficient when a discovery violation will result in the exclusion of a defense witness. The trial court must consider a fourth factor and explore “whether any other reasonable alternatives can be employed to overcome ... possible prejudice,” including the declaration of a mistrial.
 
 McDuffie,
 
 970 So.2d at 322 (quoting
 
 Casseus v. State,
 
 902 So.2d 294, 295 (Fla. 4th DCA 2005)). Underpinning this extreme reluctance to exclude defense witnesses is the understanding that the right to call witnesses is a basic foundation of due process. Amend. VI, U.S. Const.; Art. I, § 16(a), Fla. Const. As Justice Black explained many years ago,
 

 A person’s right to reasonable notice of a charge against him, and an opportunity to be heal’d in his defense — a right to his day in court — are basic in our system of jurisprudence; and these rights include, as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel.
 

 In re
 
 Oliver; 333 U.S. 257, 273, 68 S.Ct. 499, 92 L.Ed. 682 (1948).
 

 We have considered appellant’s other arguments and find them without merit. Accordingly, his conviction for grand theft of an automobile is affirmed and his conviction for first degree murder is reversed and remanded for a new trial consistent with this opinion.
 

 Affirmed in Part, Reversed in Part and Remanded.
 

 DAMOORGIAN and GERBER, JJ., concur.
 

 [1]
 

 .
 
 Richardson v. State,
 
 246 So.2d 771 (Fla. 1971).
 

 [2]
 

 . Appellant was also charged with robbery of the cyclist, but the jury was unable to reach a verdict on that charge.
 

 [3]
 

 . The trial court did not address all three parts of the
 
 Richardson
 
 analysis. The court made no findings of willfulness on the part of appellant or of the triviality of the testimony. The trial court’s singular finding was some measure of prejudice to the State. Though we reverse on other grounds, we note that a trial court
 
 must
 
 address all three prongs of the
 
 Richardson
 
 inquiry; otherwise, the court's analysis is not adequate.
 
 Flores v. State,
 
 872 So.2d 441, 443 (Fla. 4th DCA 2004).
 

 [4]
 

 . The State argues the law does not allow a defendant to present evidence of his lack of mental capacity to show he was more susceptible than others to suggestion. The State relies on
 
 Benitez v. State,
 
 952 So.2d 1275, 1277 (Fla. 2d DCA 2007), for the proposition
 
 *1021
 
 that “diminished mental capacity is not relevant to whether [a defendant]
 
 knowingly and intelligently
 
 waived his
 
 Miranda
 
 rights.” However, the State has taken that phrase out of context and, therefore, its reliance on
 
 Beni-tez
 
 is misplaced.
 

 In
 
 Benitez,
 
 the trial court denied a motion to suppress a confession based on its finding that diminished capacity is not a "recognized defense.”
 
 Id.
 
 at 1276. The Second District reversed because the trial court erroneously considered diminished capacity as the test in determining whether a defendant "knowingly and intelligently” waives his
 
 Miranda
 
 rights. The Second District found that “diminished mental capacity” may be "relevant to whether the defendant
 
 voluntarily
 
 waived his
 
 Miranda
 
 rights.”
 
 Id.
 
 at 1277. Further, the Second District found as to the issue of whether the waiver is "knowingly and intelligently” made, the trial court should have examined
 
 other factors,
 
 including “the defendant's age, intelligence, background, and experience.”
 
 Id.
 
 (citing
 
 Ramirez v. State,
 
 739 So.2d 568, 575-76 (Fla. 1999)). Finally, the Second District acknowledged the trial court's acceptance of expert testimony as part of that examination.
 

 Judge Northcutt, in an opinion concurring in part and dissenting in part, perhaps more clearly articulated the majority’s holding in
 
 Benitez
 
 as the following:
 

 [The circuit court] surmised that because Florida does not recognize a defendant's diminished mental capacity, i.e., an abnormal mental condition other than legal insanity, as a defense to a specific intent crime, [the defendant's] inability to understand his
 
 Miranda
 
 rights was not a basis for excluding his confession. As the majority notes, the circuit court was wrong; the prohibition against submitting evidence of a defendant's diminished mental capacity as a defense to the charges against him does not preclude consideration of that factor when assessing the validity of his
 
 Miranda
 
 waiver.
 

 Benitez,
 
 952 So.2d at 1282.
 

 [5]
 

 . Likewise, the failure to conduct an adequate
 
 Richardson
 
 inquiry is subject to harmless error analysis.
 
 Flores,
 
 872 So.2d at 443;
 
 Comer
 
 
 *1022
 
 V.
 
 State,
 
 730 So.2d 769, 775 (Fla. 1st DCA 1999) (citing
 
 State v. Schopp,
 
 653 So.2d 1016, 1021 (Fla. 1995)).